# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-00364-SCT

*WAL-MART STORES, INC.*
*v.*
*TURNER FRIERSON, JR. AND PINKIE MAE FRIERSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/18/2000 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAWRENCE D. WADE |
| | R. BRITTAIN VIRDEN |
| ATTORNEY FOR APPELLEES: | RICHARD BENZ, JR |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 6/06/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/27/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Turner Frierson, Jr. filed suit against Wal-Mart Stores, Inc. (Wal-Mart) for injuries he sustained when he slipped and fell in the vestibule of the Wal-Mart in Indianola, Mississippi. Frierson's wife, Pinkie Mae, joined this suit by asserting a claim for loss of consortium. The jury returned a verdict in favor of Turner Frierson for $100,000.00, and in favor of Pinkie Mae Frierson for $25,000.00. Judgment was entered on that verdict. Aggrieved, Wal-Mart has perfected its appeal.

## FACTS

¶2. As Turner Frierson was leaving Wal-Mart on August 30, 1996, he slipped and fell in the vestibule. Testimony at trial established that it had rained that afternoon. Wal-Mart employees had left an outside door, which led to the vestibule, open for other employees to return shopping carts inside the store. Frierson asserted that rain blew through the open door into the vestibule and that the rain, combined with water dripping off of the shopping carts, made the tile floor slippery. Wal-Mart alleged it was Frierson's own negligence which contributed to his fall, and in any event, that the Wal-Mart employees had not acted

negligently.

¶3. Prior to trial, the parties disagreed as to the proof Frierson could present to the jury with respect to the extent of his injuries. The Friersons had no private health insurance. Medicaid and Medicare paid a portion of Frierson's medical expenses. Pursuant to Medicaid/Medicare regulations, that portion of Frierson's expenses not paid by Medicaid or Medicare was "written off," or eradicated, by those who had provided medical assistance to him. The Friersons made no independent payments. Wal-Mart filed a motion in limine attempting to prevent the Friersons from introducing evidence of any of the medical expenses which had been eradicated. Wal-Mart argued that allowing the introduction of these expenses would allow the Friersons to realize an impermissible windfall as no one would ever be required to pay the amounts written off. Judge Gray Evans overruled Wal-Mart's motion based on a court case involving his own mother.

¶4. The case proceeded to trial. After judgment was entered on the jury's verdict in favor of the Friersons, Wal-Mart moved for judgment notwithstanding the verdict, for a new trial, and alternatively for a remittitur. This motion was denied. Wal-Mart now appeals to this Court and requests that we reverse the judgment of the trial court and remand this action for a new trial. Wal-Mart assigns the following three points as error:

**I. WHETHER THE TRIAL COURT ERRED BY PERMITTING FRIERSON TO INTRODUCE EVIDENCE OF THE AMOUNTS OF HIS MEDICAL EXPENSES "WRITTEN OFF" BY HIS VARIOUS MEDICAL PROVIDERS AFTER PARTIAL PAYMENT OF SUCH EXPENSES BY MEDICAID AND MEDICARE.**

**II. WHETHER THE TRIAL JUDGE FAILED TO ACT IMPARTIALLY SO AS TO PREJUDICE WAL-MART WHEN HE BASED HIS DENIAL OF WAL-MART'S MOTION IN LIMINE TO EXCLUDE THE AMOUNTS OF THE MEDICAL EXPENSES "WRITTEN OFF" BY MEDICAID AND MEDICARE ON A CASE INVOLVING THE SAME ISSUES TO WHICH HIS MOTHER WAS A PARTY.**

**III. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE TO INDICATE THAT IT WAS BASED ON IMPROPER BIAS, PASSION, AND PREJUDICE.**

<u>DISCUSSION</u>

**I. WHETHER THE TRIAL COURT ERRED BY PERMITTING FRIERSON TO INTRODUCE EVIDENCE OF THE AMOUNTS OF HIS MEDICAL EXPENSES "WRITTEN OFF" BY HIS VARIOUS MEDICAL PROVIDERS AFTER PARTIAL PAYMENT OF SUCH EXPENSES BY MEDICAID AND MEDICARE.**

¶5. Wal-Mart argues that the trial court erred by allowing the jury to consider evidence of medical expenses which were later written off by Frierson's medical providers pursuant to Medicare and Medicaid regulations. Thus, Wal-Mart concludes the Friersons were permitted to realize an impermissible profit and windfall in the action.

¶6. The Friersons respond only that Wal-Mart waived this issue for appeal. The Friersons assert that because Wal-Mart did not file a motion to revise the verdict, did not seek a jury instruction that would have categorized the damages, or put on proof concerning the write offs, this issue is barred before this Court. We disagree. Wal-Mart initially filed a motion in limine specifically targeted to prevent any mention of the

amounts of Frierson's medical expenses which were written-off by the various medical providers. During the trial itself, the deposition of one of Frierson's doctors was read into evidence. Counsel for the Friersons objected to the mention of Medicare and Medicaid. Counsel for Wal-Mart responded: "Well then if Your Honor wants to strike every reference to Medicaid, which we still sincerely believe is what the limit should be, we'd like to go ahead and make sure that a copy of this deposition is attached for the record as an offer of proof related to the same thing." The trial judge sustained the Friersons' objection. Later, during Turner Frierson's direct examination, counsel for the Friersons sought to introduce Frierson's medical expenses, and counsel for Wal-Mart restated the objection. The same occurred during discussion of the proposed jury instructions. Finally, Wal-Mart also filed a motion for a judgment notwithstanding the verdict, for a new trial, and alternatively, for a remittitur. This motion was denied. Thus, it can hardly be said that Wal-Mart waived its right to object before this Court. Wal-Mart clearly objected to any proof of the written off portion of the medical expenses before, during, and after the trial. Therefore, we will review this issue on its merits.

¶7. We utilize an abuse of discretion standard when reviewing evidentiary rulings by a trial judge. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So. 2d 200, 210 (Miss. 1998). In order to reverse a case on the admission or exclusion of evidence, the ruling must result in prejudice and adversely affect a substantial right of the aggrieved party. *Terrain Enters., Inc. v. Mockbee*, 654 So.2d 1122, 1131 (Miss.1995). Thus, not only must the trial judge abuse his discretion, the harm must be severe enough to harm a party's substantial right. We reject Wal-Mart's assignment of error in light of this Court's recent opinion in *Brandon HMA, Inc. v. Bradshaw*, 809 So.2d 611 (Miss. 2001). As Wal Mart argues in the case at bar, Brandon also argued that compensatory damages are a "windfall" in cases where a plaintiff has been reimbursed by medical insurance. In *Brandon HMA*, we found that Medicaid payments are subject to the collateral source rule, which states that a tortfeasor cannot mitigate its damages by factoring in compensation the plaintiff received from a collateral source other than the tortfeasor, such as insurance. *Id.* at 618-20 (citing *Coker v. Five-Two Taxi Serv., Inc*., 211 Miss. 820, 826, 52 So.2d 356, 357 (1951). We went on to find that

> Although this Court has never expressly decided whether Medicaid patients can introduce into evidence the full amount of their bills since the Legislature modified the statute, many other jurisdictions have dealt with the question (sometimes as relates to state-run medical assistance programs but the arguments are the same) and applied the collateral source rule. (citations omitted). There is no reason why Medicaid benefits should be treated any differently than insurance payments, and they should be subject to the collateral source rule.

*Brandon HMA, Inc*., 809 So.2d at 618.

¶8. The rationale employed in *Brandon HMA* to Medicaid payments applies equally to Medicare payments. The trial court did not abuse its discretion in admitting proof of the written off portion of the medical expenses.

**II. WHETHER THE TRIAL JUDGE FAILED TO ACT IMPARTIALLY SO AS TO PREJUDICE DEFENDANT WHEN HE BASED HIS DENIAL OF WAL-MART'S MOTION IN LIMINE TO EXCLUDE THE AMOUNTS OF PLAINTIFF'S MEDICAL EXPENSES "WRITTEN OFF" BY MEDICAID AND MEDICARE ON A CASE INVOLVING THE SAME ISSUES TO WHICH HIS MOTHER WAS A PARTY.**

¶9. Wal-Mart next asserts that Judge Evans strayed from Canon 2(B) of the Code of Judicial Conduct because he based his decision of Wal-Mart's motion in limine on a case involving his own mother. Canon 2(B) states in pertinent part that "judges shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment." The comments to Canon 2(A) further state:

> Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restriction on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

Wal-Mart contends the result of Judge Evans's bias was to prejudice the trial. Wal-Mart directs our attention to the following:

> BY THE COURT: All right, what have the Appellant [sic] Courts said about this?

> BY MR. VIRDEN: My research reveals no Mississippi cases. . .

> BY THE COURT: I think I can pull up one [case]. You can't cite it though. It's Evans vs. Clark County Hospital [sic]. *It involves my mother* (emphasis added). The 5th Circuit - - Judge Lee refused to let the jury hear the full amount of the medical expenses at the trial in Meridian. The judgment we got was extremely low. We appealed it to the 5th Circuit, and they said he was in error. Now, it's a case that's just about that long (Indicating). It says, "This case may not be cited." [sic] So, it is not binding law, so there may not be anything. Mr. Benz, were you able to find anything?

> BY MR. BENZ: Well, no, sir. We haven't found anything.

> BY THE COURT: By the way, we settled our case for a considerable amount.

> BY MR. BENZ: Good.

> BY THE COURT: I thought ya'll ought to know that.

Wal-Mart additionally directs our attention to the Friersons' later argument during the hearing on the motion in limine:

> ARGUMENT BY MR. BENZ: Judge, in a perfect world, you know, the jury would know all this. We can sit here and say, okay, Medicaid paid this. This is the deal between Medicare. He's not going to get charged for that. You know, all the things that we three know here today, you know, a jury would know all that, and they could figure that in however they wanted to. But it ain't a perfect world, and we can't put on proof of Medicaid and Medicare, so then what you're looking at is if I'm not allowed for this Plaintiff to put on the $15,000.00 or $18,000.00 - - or whatever it is. If I'm not allowed to put that on, and the jury just sees $5,000.00, *then it's maybe exactly like in your mama's case. You know, they end up saying, well, this must not have been much of an injury, and we're not going to return much of a verdict* (emphasis added).

> BY THE COURT: That's where the argument comes to me. I agree with you a hundred percent on what you said. My problem with it is that if the medical bill that is allowed to be introduced is reduced, for whatever reason, from $300,000.00 - -let's be ridiculous - - down to $10,000.00, there

is no doubt this affects the amount of the judgment the jury renders. Now, what the Appellant [sic] Court is going to say about that in Mississippi, I have no idea. . .

¶10. The Friersons assert that because Wal-Mart made no objection or request for recusal, Wal-Mart, consequently, did not properly preserve this matter for appeal. This Court agrees. "It is axiomatic that a litigant is required to make a timely objection." *Smith v. State*, 797 So. 2d 854, 856 (Miss. 2001) (citing *Barnett v. State*, 725 So. 2d 797, 801 (Miss. 1998)). "We have repeatedly held that if no contemporaneous objection is made, the error, if any, is waived." *Id.* (citing *Walker v. State,* 671 So. 2d 581, 597 (Miss. 1995)). Wal-Mart made no contemporaneous objection to Judge Evans's reference to his mother's case nor did it file a motion for recusal. Wal-Mart asserts it filed no motion for recusal because it never intended to seek recusal of Judge Evans. Wal-Mart states it did not believe that Judge Evans's recusal was necessary since it believed any bias and/or personal feelings concerned only this one evidentiary issue, not the ultimate outcome of the case. Wal-Mart offers no explanation for its failure to object. Consequently, Wal-Mart is procedurally barred from raising this matter for the first time before this Court.

¶11. However, "in order to prevent a miscarriage of justice, this Court retains the inherent power to notice error notwithstanding trial counsel's failure to preserve the error." *Tate v. State*, 784 So. 2d 208, 214 (Miss. 2001) (citing *Johnson v. Fargo*, 604 So. 2d 306 (Miss. 1992)). With regard to a different Canon of Judicial Conduct, Canon 3(C)(1), we have previously stated that: "Canons such as 3(C)(1) 'enjoy the status of law such that we enforce it rigorously, notwithstanding the lack of litigant's specific demand.'" *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1208 (Miss. 2000) (citing *Davis v. Neshoba County Gen. Hosp.*, 611 So. 2d 904, 905 (Miss. 1992)). We find no reason that Canon 2(B) should not be afforded the same legal "status" as Canon 3(B)(1), and its mandates similarly rigorously enforced.

¶12. Even so, this Court finds that Wal-Mart has failed to demonstrate that Judge Evans's ruling was the result of actual bias or prejudice. We have set forth the presumptions and burdens of proof regarding a trial judge's impartiality as follows:

> A presumption of impartiality exists that a judge, sworn to administer impartial justice, is qualified and unbiased. *McBride [v. Meridian Public Improvement Corp.],* 730 So. 2d [548] at 551 [(Miss. 1998)]. To overcome the presumption, the evidence must produce a "reasonable doubt." *Id. On appeal, however, this Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. Beyer v. Easterling*, 738 So. 2d 221, 228 (Miss. 1999) (emphasis added).

*Summers*, 759 So. 2d at 1209. In *Summers*, the defendant filed a motion to recuse the trial judge, Judge Yerger. Before he was a judge, Judge Yerger had been the lead attorney in a case opposing the party for whom Summers was an expert medical witness. Summers asserted that he had testified numerous times in cases over a period of many years in which Judge Yerger had been the lead attorney. Judge Yerger professed he did not even initially recognize Summers, that he had no personal animosity toward Summers, and remembered their encounters as professional but vigorous. *Id.* at 1209. Judge Yerger refused to recuse himself. We affirmed his decision. We stated that Summers "did not prove that a reasonable person, knowing all the facts and circumstances, would harbor doubts about Judge Yerger's impartiality." *Id.*

Therefore, we held Judge Yerger did not commit manifest error in refusing to recuse himself, nor did he abuse his discretion when he denied Summers' motion to disqualify. ***Id.***

¶13. We also rejected a claim of bias propounded by another individual against Judge Evans in ***Farmer v. State***, 770 So. 2d 953 (Miss. 2000). Farmer pled guilty to an aggravated assault charge, and Judge Evans sentenced Farmer to serve a term of twenty years. We set aside Farmer's guilty plea holding that he had been denied his right to effective assistance of counsel. Prior to his trial, Farmer filed a motion for Judge Evans's recusal claiming that because Judge Evans had heard his recitation of events in the prior proceeding, Judge Evans would still have this version of events in mind when making all rulings concerning the trial. Judge Evans refused to recuse himself. We found no error in Judge Evans presiding over the trial because Farmer failed to show any actual prejudice or bias. ***Id.*** at 957. We also found that Farmer failed to overcome the presumption that Judge Evans had acted impartially. ***Id.*** at 958.

¶14. Turning to the present case, we must begin by presuming that Judge Evans is qualified and unbiased unless and until Wal-Mart produces evidence which creates a reasonable doubt about the validity of this presumption. While Judge Evans's comments regarding the size of his mother's settlement may have been improper, this alone does not rebut the presumption of impartiality afforded to Judge Evans. Judge Evans's mother was not a party to the instant litigation and had no stake in its outcome. Judge Evans also makes clear that in his mother's case, the trial court was held in error by the Fifth Circuit and reversed for having excluded the full amount of the medical expenses. *See* ***Evans v. H.C. Watkins Mem'l Hosp., Inc.***, 778 F.2d 1021 (5th Cir. 1985). The very portion of the hearing of which Wal-Mart now complains, grew directly out of Judge Evans's inquiry as to what the appellate courts have done with this issue. He began by pointing out that the disposition of this issue in the case involving his mother was "not binding law" in the present litigation. Judge Evans repeatedly asked counsel for both parties what the law is, both in Mississippi and other states, with regard to this issue. His mother was never mentioned again.

¶15. In light of the record as a whole, Wal-Mart did not prove that a reasonable person, knowing all the facts and circumstances, would harbor doubts about Judge Evans's impartiality. Consequently, this assignment of error is without merit.

### III. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE TO INDICATE THAT IT WAS BASED ON IMPROPER BIAS, PASSION, AND PREJUDICE.

¶16. Wal-Mart's final assertion of error that the jury's $100,000.00 verdict in favor of Turner Frierson and the $25,000.00 verdict in favor of Pinkie Mae Frierson were against the overwhelming weight of the evidence or the result of bias, passion, or prejudice on the part of the jury. "A verdict should be set aside where it is manifest, from the evidence and surroundings, that it is not a fair and true verdict." ***Gibson v. A.P. Lindsey, Distributor, Inc.***, 233 Miss. 853, 864, 103 So. 2d 345, 349 (1958). We have stated:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.

***Herrington v. Spell***, 692 So. 2d 93, 103 (Miss. 1997)(citations omitted). *Accord*, ***Illinois Cent. R.R.***

***v. Clinton***, 727 So. 2d 731, 734 (Miss. Ct. App. 1999).

## A.

¶17. We will first address the verdict for Pinkie Mae Frierson. Mrs. Frierson filed a claim against Wal-Mart for loss of consortium. The Legislature has provided for such a claim by statute, which is codified in Miss. Code Ann. § 93-3-1 (1994). That statute reads in pertinent part that: "A married woman shall have a cause of action for loss of consortium through negligent injury of her husband." *Id.* Regarding a claim for loss of consortium, we have previously said:

> The interest sought to be protected is personal to the wife and arises out of the marriage relation. She is entitled to society, companionship, love, affection, aid, services, support, sexual relations and the comfort of her husband as special rights and duties growing out of the marriage covenant. To these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home. All of these are included in the broad term, "conjugal rights." The loss of consortium is the loss of any or all of these rights. . . Consortium does not consist alone of intangible mental and emotional elements, but may include services performed by the husband for the wife which have a monetary value. . .It should be kept in mind always that the wife's recovery is for *losses suffered by her*.

***Tribble v. Gregory***, 288 So. 2d 13, 16-17 (Miss. 1974). As pointed out by Wal-Mart, we also limited the recovery allowed by a wife claiming loss of consortium to exclude recovery for:

> loss of financial support by the husband, recovery for nursing services and recovery for pain and suffering of the husband because these are items that he may recover in a suit by him.

***Id.*** at 17.

¶18. Recently, this Court has had occasion to rule on a similar challenge to a loss of consortium verdict in ***Purdon v. Locke***, 807 So.2d 373 (Miss. 2001). In ***Purdon***, we found that the wife did prove loss of consortium. And, as in the case at hand, the bulk of the evidence supporting her loss of consortium claim concerned her husband's pain and suffering. We specifically found that the jury could have inferred that the husband's pain and suffering adversely affected their relationship after hearing evidence that the husband often slept in a recliner in the living room, was in pain, and treated his wife poorly due to his suffering. ***Id***. at 379. Here, the jury heard similar testimony. Mr. Frierson testified that he is in such pain that he sometimes watches television all night, that he cannot do the things he used to be able to do, that he is in pain most of the time and takes an abundance of medicine daily. Mrs. Frierson corroborated Mr. Frierson's testimony that he is in much pain and added that the pain causes him to be very irritable and that he takes it out on her. Mrs. Frierson also testified that the situation is so stressful, her blood pressure has increased and she is under a doctor's care.

¶19. To overturn this verdict, we are required to find that the jury's verdict is against the overwhelming weight of the evidence after accepting as true all evidence which supports the verdict. It is clear that Mrs. Frierson was not only testifying as to the extent of Mr. Frierson's pain, but also to its effects on their relationship. The jury could and did infer that Mr. Frierson's pain and suffering adversely affected their relationship. We affirm the verdict in favor of Mrs. Frierson, finding it was not against the overwhelming weight of the evidence or the result of bias, passion, or prejudice.

## B.

¶20. Wal-Mart lastly asserts the $100,000.00 verdict in favor of Turner Frierson was against the overwhelming weight of the evidence or the result of bias, prejudice, or passion. Wal-Mart claims this is supported by the fact that at most, even including the amounts which were written off, Frierson's medical expenses totaled $16,574.04, and the jury's award is more than six times that amount.[1] Wal-Mart claims that the medical expenses are the only amount of "special damages" Frierson could offer because he had no lost wages or property damage.

¶21. We have previously stated that there is no fixed rule for determining damages for personal injuries. *St. Louis-San Francisco Ry. v. Bridges*, 159 Miss. 268, 131 So. 99 (1930). We proceed on a case-by-case basis in determining whether a jury award is excessive. *Biloxi Elec. Co. v. Thorn*, 264 So.2d 404, 405 (Miss.1972). Although a jury verdict can be so excessive as to evince bias, passion, and prejudice, our standard of review is very high,

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess.

*Detroit Marine Eng'g v. McRee*, 510 So.2d 462, 471 (Miss.1987) (citing *Biloxi Elec.*, 264 So.2d at 405). Furthermore, "[t]he only evidence of corruption, passion, prejudice or bias on the part of the jury is an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of damages." *Id*. at 406.

¶22. Evidence is viewed in the light most favorable to the verdict and all reasonable inferences are given thereof. *Odom v. Roberts*, 606 So.2d 114, 118 (Miss.1992). In essence, we will not disturb a jury's award of damages unless its size, in comparison to the actual amount of damage, "shocks the conscience." *City of Jackson v. Locklar*, 431 So.2d 475, 481 (Miss.1983). In *James v. Jackson*, 514 So.2d 1224, 1225-26 (Miss.1987), we enumerated the elements of damages which must be examined for evidence of bias. They are (1) past and future pain and suffering; (2) past and future medical expenses; (3) lost wages; and (4) future disability. *Id*.

¶23. Frierson testified that he could not get around as much as he used to and that the pain in his back was more severe than what it was prior to the fall. He also testified that he wakes up a night and cannot rest well unless he is on strong medication. Pinkie Mae Frierson's testimony contains descriptions of Frierson's pain and suffering and the differences he has experienced after the fall.

¶24. The $100,000 verdict in this case does not shock the conscience of the Court. We must give the verdict all favorable inferences and, in light of the evidence presented, we cannot say that the verdict in favor of Frierson was against the overwhelming weight of the evidence or the result of bias, passion, or prejudice.

## CONCLUSION

¶25. For these reasons, the judgment and the jury's award of $25,000.00 in favor of Pinkie Mae Frierson and $100,000 in favor of Turner Frierson, Jr. are affirmed.

¶26. **AFFIRMED.**

**McRAE, P.J., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY WALLER, J. WALLER, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J.; SMITH, P.J., JOINS IN PART. COBB, J., NOT PARTICIPATING.**

**SMITH, PRESIDING JUSTICE, DISSENTING:**

¶27. Because the majority opinion undermines the well-recognized interest of public confidence in an impartial judiciary and because the jury's verdicts in favor of Pinkie Mae Frierson and Turner Frierson, Jr. are against the overwhelming weight of the evidence, I respectfully dissent.

**I.**

¶28. The majority holds that the trial judge did not violate Canon 2(B) of the Code of Judicial Conduct though he based his determination of Wal-Mart's motion in limine on a case involving his own mother. Canon 2(B) states in part, "Judge shall not allow their family, social, or other relationships to influence the judges' conduct or judgment." The general rule that a reasonable person knowing all the facts and circumstances here would certainly harbor doubts as to the judges' impartiality. In my view, Judge Evans's comments were improper and detrimental to the interest of public confidence in the judiciary.

¶29. The record indicates that when counsel could not point to Mississippi cases regarding the propriety of allowing the jury to hear the full amount of medical expenses, Judge Evans relied on *Evans v. H.C. Watkins Mem'l Hosp., Inc.*, 778 F.2d 1021 (5th Cir. 1985), a case involving his mother. Regarding that case, he stated: "Judge Lee refused to let the jury hear the full amount of the medical expenses at the trial in Meridian. *The judgment **we** got was **extremely low**... By the way, **we** settled our case for a considerable amount.... I thought y'all ought to know that*." (emphasis added).

¶30. Judge Evans's comments indicate his personal feelings regarding the size of the verdict in *Evans*, his belief that the judgment received was low because the trial judge in that case refused to allow the jury to hear the full amount of medical expenses, as well as the fact that he considered himself personally involved in that case. Even the Friersons' attorney realized this. In arguing the motion in limine, Frierson's counsel stated, "If I'm not allowed to put [on proof of Medicaid and Medicare], and the jury sees $5,000.00, *then it's maybe exactly like in your mama's case. You know, they end up saying, well, this must not have been much of an injury, and we're not going to return much of a verdict*." (emphasis added). Judge Evans then responded, "That's where the argument comes to me. I agree with you a hundred percent...."

¶31. Clearly, influences such as those named in Canon 2(B) are strictly prohibited and, as the majority recognizes, must be rigorously enforced. Judge Evans's statements demonstrate that he allowed his personal interest in his mother's case to control his decision on the issue before him. Under these facts there is no way to avoid the general rule that a reasonable person, knowing all the facts and circumstances, would certainly harbor doubts as to Judge Evans's impartiality on this issue. The comments to Canon 2(B) express more than a concern for *actual* bias. The comments state the additional concern for the *appearance* of impropriety and its effect on the public's confidence in the judiciary. By sanctioning Judge Evans's conduct in this matter, the majority does damage to those concerns and undermines the integrity and impartiality of

the judiciary.

## II.

¶32. It is impossible to adequately examine the record to determine whether or not sufficient medical proof was presented to the jury which would support this $100,000 verdict because the depositions of the two physicians are not in the court record as claimed. The record should have been supplemented so that this issue could have been properly examined by the Court.

## III.

¶33. The majority affirms the verdicts in favor of Mr. and Mrs. Frierson, finding that they were not against the overwhelming weight of the evidence. I respectfully disagree.

¶34. Mrs. Frierson's claim against Wal-Mart was for loss of consortium. Regarding a claim for loss of consortium, we have previously said, "The interest sought to be protected is personal to the wife and arises out of the marriage relation.... It should be kept in mind always that the wife's recovery is for *losses suffered by her*. ***Tribble v. Gregory***, 288 So. 2d 13, 16-17 (Miss. 1974). We also limited the recovery allowed by a wife claiming loss of consortium to exclude recovery for:

> loss of financial support by the husband, recovery for nursing services and recovery for pain and suffering of the husband because these are items that he may recover in a suit by him.

***Id.*** at 17.

¶35. The majority relies on ***Purdon v. Locke***, 807 So. 2d 373 (Miss. 2001), in which this Court found that the evidence presented supported the wife's claim for loss of consortium. ***Purdon*** is distinguishable from the case sub judice. In that case, Rita Locke testified that her husband's emotional and physical change in behavior adversely affected their relationship. She testified that he would sleep in the chair, rather than in their bed, and that he did not care to be around her as he did before his injury. Rita Locke's testimony was supported by that of her husband, who testified that his emotional instability had affected his relationship with his wife. We found that this testimony supported the jury's finding of loss of spousal assistance and affection.

¶36. In the case at bar, the only evidence presented to support Mrs. Frierson's claim was her testimony. The only portion which comes close to addressing her claim is as follows:

> Q. . . .Your claim is for the way his fall and his injuries from the fall have affected you.
>
> A. Right.
>
> Q. Can you tell [the jury] about that?
>
> A. Well, if - - when a person is sick, he can be very irritable and he can't put [sic] his feelings out on nothing but the one who's right there with him, and some time it get [sic] very bad and for me have to say [sic]. It run [sic] my blood pressure up. I'm under a doctor's care and so it's been pretty stressful.

¶37. The remainder of Mrs. Frierson's testimony relates solely to *her husband's* pain and suffering. No further evidence was introduced to support Mrs. Frierson's claim. There was absolutely no evidence

offered to show how Mr. Frierson's injuries have affected his relationship with his wife. Mrs. Frierson offered no medical testimony regarding any increase in her blood pressure. The testimony that Mr. Frierson is irritable and her caring for him is stressful is simply insufficient to support the jury's award in this case.

¶38. For these reasons, I respectfully dissent.

**WALLER, J., JOINS THIS OPINION IN PART.**

**WALLER, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶39. I concur with the majority that circuit court properly allowed into evidence all medical expenses incurred by Turner Frierson, notwithstanding the fact that part of the medical expenses were written off by Medicaid and Medicare. *See **Brandon HMA, Inc. v. Bradshaw***, 809 So. 2d 611 (Miss. 2001). Judge Evans improperly drew upon his mother's case in deciding to admit the evidence, but this error is harmless because the expenses were properly admitted into evidence.

¶40. I respectfully disagree with the majority's conclusion that the award of damages for Pinky Frierson's loss of consortium claim was proper. Loss of consortium injuries must be something more substantive than a general statement that the injuries affected the marital relationship. In my opinion, the threshold of required proof for loss of consortium should be similar to what we require for emotional distress. There is no evidence to establish any of the crucial elements of the damage she suffered personally as a result of his injuries, such as mental anguish, lack of sexual and intimate relations, and strains on homemaking responsibilities after her husband's injury.

¶41. In loss of consortium cases the plaintiff must establish separate and distinct damages which resulted from injury to his or her spouse to receive compensation. In ***Alldread v. Bailey***, 626 So. 2d 99, 102 (Miss. 1993), we quoted ***Anderson v. Mutert***, 619 S.W.2d 941, 945 (Mo. Ct. App.1981), as follows: "[A] cause of action accruing to a party for loss of consortium is separate and distinct from that party's spouse suffering personal injury. The spouse seeking compensation for loss of consortium must show that he or she suffered damages arising out of the other's injuries. . . ."

¶42. A good marriage, even under ideal conditions, is not a continuously enjoyable relationship. There will always be ups and downs in marriages, and these should not necessarily give rise to an award of damages unless the incident is of such magnitude that one could say that something over and above life's ordinary trials and tribulations occurred. On the record before the Court, Mrs. Frierson has demonstrated nothing more than an inconvenience and the award of damages should be considered a windfall.

¶43. I therefore respectfully dissent and would reverse the award of damages for loss of consortium.

**PITTMAN, C.J., JOINS THIS OPINION. SMITH, P.J., JOINS THIS OPINION IN PART.**

1. Frierson asserts the proof of his medical expenses totals $18,409.50.