# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01384-SCT

*VIRGINIA MCGEE, INDIVIDUALLY; AND
LEROY MITCHELL, AS CONSERVATOR OVER
THE ESTATE OF VIRGINIA MCGEE*

*v.*

*RIVER REGION MEDICAL CENTER, ET AL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/21/2009 |
| TRIAL JUDGE: | HON. M. JAMES CHANEY, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KENYA R. MARTIN |
| ATTORNEYS FOR APPELLEE: | STUART B. HARMON |
| | JAN F. GADOW |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 03/03/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Virginia McGee suffered an intravenous infiltration and burns on her arm while a patient at River Region Medical Center and filed a malpractice lawsuit against the hospital. At trial, the judge ruled that McGee's expert had failed to articulate the applicable standard of care and entered a directed verdict for River Region. McGee appeals, arguing, among other things, that the directed verdict was improper. We agree with McGee and reverse and remand this case for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2.    In the early morning hours of June 30, 2007, seventy-seven-year-old Virginia McGee was taken via ambulance to the emergency room at River Region Medical Center, complaining of general weakness and confusion.  McGee had a history of high blood pressure and diabetes, and her blood-sugar level was low.  En route to the ER, the paramedics inserted an intravenous catheter (IV) into McGee's left arm to administer fluids to raise her glucose level.

¶3.    Later that night, McGee's attending nurse, Cheryl Washington, noticed that McGee had suffered an IV infiltration[1] to her left arm.  McGee claims that the infiltration was the result of Washington's negligent administration of medicine through the IV.  River Region claims that IV infiltration is a well-known risk of IV therapy and that its occurrence does not prove any negligent act by its nurses.  After Washington noted the IV infiltration, she stopped the IV and started another one.  A couple of hours later, Washington applied a warm compress to McGee's left arm to treat the swelling from the infiltration.  Washington did not consult a doctor before she applied the warm compress.  A few hours after Washington applied the compress, she noticed blisters on McGee's left forearm.  After a few more days at River Region, McGee received additional care at Promise Hospital and was discharged.  Some of McGee's medical bills were paid by Medicare, and the hospitals "wrote off" the remainder.[2]

_____

[1]Dr. Patricia Beare, one of McGee's medical experts, testified that an IV infiltration is "leakage of fluid from an IV into the patient's tissues from an IV line."

[2]McGee's total bill at River Region was approximately $40,000.  Medicare paid approximately $5,000, and River Region "wrote off" the remaining amount.  McGee's total

2

¶4. McGee, along with her son, Leroy Mitchell, as conservator of her estate,[3] filed suit against Nurse Julie Antley,[4] River Region Medical Center, and Jane Does 1-10.[5] McGee alleged that River Region's staff negligently had caused her IV infiltration, which led to blisters and boils on her left arm, nerve damage, and permanent disfigurement. McGee sought damages for current and future medical expenses, pain and suffering, permanent nerve damage, disfigurement, and emotional distress.

¶5. Prior to trial, River Region filed a motion in limine, asking the trial court to prohibit McGee from claiming as damages any amount that the hospitals had "written off." The trial judge granted the motion as to River Region, but denied the motion as to Promise. The effect of the ruling was that McGee would be allowed to introduce as damages the entire $71,000 Promise bill, but only $5,000 of the River Region bill (the amount paid by Medicare).

¶6. At trial, McGee called Nurses Julie Antley and Cheryl Washington, who testified about the events surrounding McGee's injuries. McGee then called Dr. Patricia Beare[6] as

---

bill at Promise was approximately $71,000. Medicare paid approximately $23,000, and Promise "wrote off" the remaining amount.

[3]Leroy Mitchell was appointed conservator of McGee's estate because of "advanced age, physical incapacity and her inability to read or write." Mitchell and McGee are referred to collectively as "McGee."

[4]Julie Antley was one of McGee's nurses, but was not working when the IV infiltration and the blisters occurred. The trial court ultimately granted summary judgment in her favor.

[5]McGee later amended her complaint, adding Vicksburg Healthcare LLC as a defendant. According to River Region, it is a "d/b/a" of Vicksburg Healthcare.

[6]Dr. Beare has a Ph.D. in philosophy from North Texas State. She has a Master's Degree in nursing from the University of Texas and is a registered nurse in Louisiana and Texas. She is not a medical doctor.

an expert, who was expected to testify as to the applicable standard of care and that River Region's employees had breached that standard in their treatment of McGee. Although the trial judge accepted Dr. Beare as an expert in the area of nursing, he subsequently ruled that McGee's counsel had failed to establish that Dr. Beare was familiar with the applicable standard of care and, therefore, she could not render an opinion. After McGee's counsel made a proffer of Dr. Beare's testimony, counsel for River Region moved for a directed verdict, asserting that Dr. Beare was McGee's sole expert who was to testify as to the applicable standard of care. The trial judge granted the motion, and McGee appeals.

¶7. On appeal, McGee argues that the trial court erred when it: (1) granted River Region's motion for directed verdict by striking Dr. Beare's testimony; (2) admitted "expert opinion testimony" from Nurse Cheryl Washington; (3) excluded proof of McGee's total medical bills; and (4) overruled McGee's **Batson**[7] challenge. We will address issues one and three only. *See* Miss. R. App. P. 17(h).

**ANALYSIS**

*I. Whether the trial judge erred when he granted River Region's motion for directed verdict.*

¶8. This Court reviews a trial judge's grant or denial of a motion for directed verdict *de novo*. **Solanki v. Ervin**, 21 So. 3d 552, 556 (Miss. 2009). "A motion for directed verdict tests the legal sufficiency of the plaintiff's evidence." **Id.** "This Court considers 'whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.'" **Id.** (quoting **Spotlite**

---

[7] **Batson v. Kentucky**, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

*Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 368 (Miss. 2008)). "[T]he trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested." *Solanki*, 21 So. 3d at 556 (citations omitted). "He will take such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party, and, if it could support a verdict for that party, the directed verdict should not be given." *Id.*

¶9.    To establish a prima facie case of medical malpractice, the plaintiff must show that:

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result.

*Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (Miss. 2007). The "'general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.'" *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997) (citations omitted). "The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert. The expert must articulate an objective standard of care." *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009). "Not only must [an] expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *McDonald v. Mem'l Hosp.*, 8 So. 3d 175, 180 (Miss. 2009) (quoting *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)).

5

¶10. McGee argues on appeal that the trial judge erroneously prohibited her expert, Dr. Beare, from rendering an opinion in this case. McGee reasons that, once the trial judge had accepted Dr. Beare as an expert in nursing care, she should have been allowed to render an opinion. River Region argues that the trial judge properly granted its motion for directed verdict, because McGee "failed to elicit testimony from [Dr.] Beare showing that she was familiar with the applicable standard of care." After a careful review of the transcript, we find that the trial judge erroneously granted River Region's motion for directed verdict.

¶11. McGee's counsel attempted at several different points during his examination of Dr. Beare to elicit her knowledge of the applicable standard of care, only to be interrupted by repeated objections from counsel for River Region. The objections continued for much of Dr. Beare's testimony, until the trial judge ruled that McGee's counsel had "not laid, in [his] opinion, the proper predicate for [Dr. Beare] to render an opinion."

¶12. River Region's position seems to be, and the trial court apparently agreed, that Dr. Beare was required to articulate the standard of care *before* she could properly render an opinion as to whether the standard had been breached. During one objection, for example, counsel for River Region stated: "He [counsel for McGee] first has to lay the predicate for the standard of care before she [Dr. Beare] offers an opinion on the standard of care."

¶13. This Court's precedent requires that the expert "identify and articulate the requisite standard that was not complied with." ***McDonald***, 8 So. 3d at 180. Dr. Beare was qualified and accepted as an expert. She testified more than once that she was familiar with the applicable standard of care. She should have been allowed to articulate her opinion as to whether that standard of care had been breached. Often, an expert's discussion of the

6

applicable standard of care is intertwined with his or her discussion of whether a breach occurred. And viewing the evidence in the light most favorable to McGee, the proffer offered by McGee's counsel indicated that Dr. Beare successfully would have articulated the standard of care for IV infiltrations and would have opined that River Region's staff had breached that standard. Thus, we find that the trial judge erred when he prematurely struck Dr. Beare's testimony and granted River Region's motion for directed verdict.

¶14. River Region also argues that, even if the trial judge's decision to exclude Dr. Beare's testimony and grant its motion for directed verdict was erroneous, it was harmless error. River Region asserts that, as a nurse, Dr. Beare was not qualified to render an opinion as to medical causation.[8] And because McGee's other two experts were, according to River Region, not going to testify as to causation, the directed verdict in its favor was still proper.

¶15. The record before us contains no expert depositions and no proffer of any expert's proposed testimony (other than Dr. Beare's). The record is insufficient for this Court to determine whether the erroneous striking of Dr. Beare's testimony was harmless error and thus, we decline to engage in further analysis.

> II. Whether the trial judge erred when he ruled that a portion of McGee's total
> medical bills would be excluded from evidence.

¶16. Although we find the first issue dispositive, we also address McGee's third issue concerning damages.

¶17. This Court reviews a trial judge's decision to admit or exclude evidence under an abuse-of-discretion standard. *Vaughn v. Miss. Baptist Med. Ctr*, 20 So. 3d 645, 654 (Miss.

---

[8]*See Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (Miss. 2009) ("We now explicitly hold that nurses cannot testify as to medical causation.").

7

2009) (citations omitted). "'Unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case . . . we will affirm the trial court's ruling.'" *Id.* (quoting *Jones v. State*, 918 So. 2d 1220, 1223 (Miss. 2005)).

¶18.    Medicare paid a portion of McGee's bills from Promise and River Region. Pursuant to their agreements as Medicare providers, both hospitals adjusted or "wrote off" the balance of those bills. The trial judge ruled that McGee would be allowed to introduce into evidence the total bill from Promise, but only approximately $5,000 of the River Region bill (the amount Medicare paid to River Region). On appeal, McGee claims that the collateral-source rule allows her to introduce into evidence the entire amount of her medical bills from River Region, including those amounts "written off." River Region argues that, because the amount it "wrote off" was not actually incurred, it is irrelevant, and thus inadmissable evidence.[9] In other words, it seeks to limit McGee's recovery to the actual amount paid by Medicare, rather than the total cost of the medical services received by McGee. Thus, the question before this Court is whether an injured plaintiff may include in a claim for compensatory damages the amount "written off" by a defendant health-care provider pursuant to its obligation as a Medicare provider.

¶19.    McGee argues that the admission of medical bills "written off" by medical providers was resolved by this Court in *Purdon v. Locke*, 807 So. 2d 373 (Miss. 2001). There, the defendant doctor claimed that the plaintiff should not be allowed to introduce the amount

_____

[9] River Region does not argue that the amount paid by Medicare should be excluded.

8

"written off" by Baptist Hospital as damages. *Id.* at 378. This Court quickly dismissed the argument, holding that, because "demands for payment were delivered to Locke and thus, incurred by him," the jury was entitled to hear them. *Id.* The burden then became Purdon's to show that the bills were not reasonable. *Id.* Purdon did not introduce any proper evidence to rebut the reasonableness of the bills, offering only inadmissible hearsay. *Id.* at 379.

¶20. In *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611 (Miss. 2001) – a case decided the same day as *Purdon* – Plaintiff Bradshaw alleged that negligent nursing care at Rankin Medical Center led to her permanent disability from brain damage. *Id.* at 613. After a trial, the jury awarded her $9,000,000 in damages. *Id.* Rankin Medical Center appealed, arguing, among other things, that the trial court erred when it allowed Bradshaw to admit the total amount of her medical bills, as opposed to the amount paid by Medicaid only. *Id.* This Court concluded that the trial court "did not err in admitting Bradshaw's medical bills which exceed the amount paid by Medicaid," noting that the hospital was attempting to collect those very same bills. *Id.* at 619-20. Thus in both *Purdon* and *Brandon*, this Court's holdings were premised on the medical provider's attempts to collect its bill and a finding that the plaintiffs had in fact "incurred" the bill.

¶21. In *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135 (Miss. 2002), Plaintiff Frierson filed suit against Wal-Mart after he slipped and fell in the Indianola store. *Id.* at 1137. Prior to trial, Wal-Mart filed a motion in limine, seeking to prevent Frierson from introducing the amounts "written off" by his medical providers under the Medicare/Medicaid regulations. *Id.* at 1138. The trial judge denied the motion, and the jury returned a verdict in favor of Frierson. *Id.* at 1137-38. On appeal, Wal-Mart argued that the trial court erred when it

9

permitted Frierson to introduce evidence of his "written-off" medical expenses, as that caused Frierson to "realize an impermissible profit and windfall in the action." *Id.* at 1139. This Court affirmed, finding that the "rationale employed in **Brandon HMA** to Medicaid payments applies equally to Medicare payments," and that it was not error to admit proof of the "written-off" portions of the medical expenses. *Id.* at 1140.

¶22.   We do not read these cases to establish a per se rule that "written-off" medical expenses are admissible. From an evidentiary perspective, every case turns on its own facts and the purpose for which the evidence is offered. But we have said that jurors "have a right to know what services and/or goods were provided for the charges made. This can serve as an aid in their deliberations with respect to the seriousness and extent of the injuries complained of." *Jackson v. Brumfield*, 458 So. 2d 736, 737 (Miss. 1984). Provided he or she can demonstrate relevance, a plaintiff should be allowed to present evidence of his or her total medical expenses, including those amounts "written off" by medical providers.

¶23.   But the question presented by McGee is one of both evidence and recoverable damages. Even though the total medical bills may be found to be relevant and admissible, we must consider the collateral-source rule in determining whether McGee can *recover* the "written-off" amounts as damages. For decades, Mississippi has recognized the collateral-source rule, under which a "wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, *wholly independent of him*." **Coker v. Five-Two Taxi Service, Inc.**, 52 So. 2d 356, 357 (Miss. 1951) (citing 25 C.J.S., *Damages*, § 99) (emphasis added). In other words, "a tortfeasor cannot use the moneys of others (insurance

10

companies, gratuitous gifts, etc.) to reduce the cost of its own wrongdoing." ***Brandon HMA, Inc.***, 809 So. 2d at 618.

¶24.     Applying the rule to the facts of this case, we find that the collateral-source rule simply does not apply to the "written-off" portion of the River Region bill.  The rule, by its very language, applies only to prohibit the introduction of evidence of payments from collateral sources *wholly independent of the tortfeasor*.  In this case, River Region, to whom the bill was owed, is also the alleged tortfeasor.  River Region provided medical services, but was not paid by McGee, Medicare, or any other source for a large portion of those services.  To accept McGee's argument would require River Region to absorb the cost of the services rendered for which there was no reimbursement and then be potentially liable for those services again in damages.  We therefore find that, although the entire medical bill may be relevant to aid the jury in assessing the seriousness and the extent of the injury, McGee may not recover as damages those amounts "written off" by River Region.

**CONCLUSION**

¶25.     We find that the trial judge erred when he granted River Region's motion for a directed verdict.  We find that the trial judge was correct when he determined that McGee could not recover from River Region those amounts which it had "written off." But we also find that he erred in granting the motion in limine, to the extent that he held that McGee could not admit her entire River Region bill simply because she could not *recover* the entire amount.  We therefore reverse this case and remand for a new trial.

¶26.  **REVERSED AND REMANDED.**

11

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. KING, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶27.    I write separately only to address the majority opinion's analysis regarding whether the erroneous striking of Dr. Beare's testimony was harmless error.  Maj. Op. at ¶¶ 14-15. River Region argues that, even with Dr. Beare's testimony, the plaintiffs could not establish causation, because Dr. Beare was not a medical doctor.  For the reasons stated in my separate opinion in *Vaughn v. Mississippi Baptist Medical Center*, 20 So. 3d 645, 656-57 (Miss. 2009) (Kitchens, J., concurring in part and dissenting in part), I disagree that Dr. Beare was, as a matter of law, unqualified to render an opinion regarding medical causation simply because a doctor of medicine is not among her numerous academic degrees.  For these reasons, I respectfully concur in part and in result.