# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60227
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2018

Lyle W. Cayce
Clerk

JIMMY LEE KELLY; PAMELA KELLY,

> Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:14-CV-70

Before WIENER, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The plaintiff brought suit under the Federal Tort Claims Act against the United States for kidney-related injuries allegedly suffered due to a federally-funded health clinic's negligence. After an 11-day bench trial, the district court ruled in favor of the Government, finding there was no proof of a breach of the standard of care or of causation. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60227

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Jimmy Kelly, a then-40-year-old brick mason and resident of Jackson, Mississippi, sought treatment for foot pain at Jackson-Hinds Comprehensive Health Clinic. That Clinic was certified under the Federally Supported Health Centers Assistance Act. *See* 42 U.S.C. § 233. Accordingly, suits for personal injuries resulting from medical care may be brought against the Clinic under the Federal Torts Claims Act. 28 U.S.C. §§ 1346(b), 2671–80. Clinic staff gathered Kelly's height, weight, vital signs, and medical history. Kelly reported a history of gout and complained of, among other things, moderate pain in both feet and problems urinating. Importantly, his blood pressure was 180/120, indicating hypertension.

Nurse Practitioner Marsha Austin treated Kelly. According to Austin, Kelly exhibited no apparent symptoms of renal failure. Clinic medical records reflect that he had "[n]o acute distress, [and was] well appearing and well nourished." In addition, he had normal heart, lung, and abdominal function. Austin diagnosed Kelly with hypertension and gout, prescribing Lisinopril-hydrochlorothiazide for his hypertension and Indomethacin for his gout. She also directed Kelly to make a follow-up appointment one week later.

Most importantly, Austin ordered various tests from the lab, including "a Basic Metabolic Panel with eGFR," a test that would have revealed Kelly's renal failure. For the lab work, Kelly's medical records state only that "[t]he patient was given the following information: . . . [l]abwork today . . . RTC 1 week for lab results." At trial, neither Austin nor Clinic staff specifically recalled treating Kelly or ordering him to get lab work, but it was the standard practice for Clinic staff to walk patients to the front desk, where they could schedule lab work and follow-up appointments. Kelly scheduled an appointment two weeks later. Although a Clinic employee drew blood and performed a glucose test, no other lab tests were completed.

No. 17-60227

Two weeks after his initial appointment at the Clinic and on the day he was scheduled for his follow-up appointment, Kelly went to the emergency room at University of Mississippi Medical Center ("UMMC"), complaining of sore throat, fever, and chest pains. Because that hospital was too crowded, Kelly entered the emergency room at St. Dominic's Hospital. St. Dominic's staff completed blood tests and discovered Kelly's creatinine level was 19.2, a critically high level indicating impaired kidney function.

Kelly's treating physician, Dr. William Smith, initially diagnosed Kelly with acute renal failure as a result of the medications prescribed by Austin. Dr. Smith ordered Kelly's medications withdrawn and performed two red-blood-cell transfusions to treat Kelly's anemia, anticipating Kelly would return to normal kidney function during his hospital stay. Kelly's creatinine levels did not drop below 15 during his nine-day hospital stay, indicating chronic kidney disease. At trial, Dr. Smith testified Kelly's lab results "suggest[ed] a chronic component" and "Chronic Kidney Disease," rather than an acute kidney injury brought on by his medications.

After being released from St. Dominic's, Kelly underwent surgery in anticipation of dialysis. He was also referred to UMMC's kidney-transplant program, where, during routine testing, Kelly tested positive for Human Immunodeficiency Virus ("HIV"). Ineligible for a kidney transplant due to his HIV diagnosis, Kelly underwent extensive dialysis. Kelly has missed dozens of scheduled dialysis appointments, requiring him to be rushed to the emergency room numerous times.

Kelly filed this medical-malpractice suit against the United States, alleging the Clinic and its employees proximately caused his kidney injuries by negligently prescribing Lisinopril and Indomethacin that combined to cause

3

No. 17-60227

his kidney failure.[1]  In the bench trial, Kelly claimed Austin breached the standard of care by, among other things, not "fully assess[ing]" Kelly's kidney function in treating his hypertension, not following up on reconciling Kelly's lab results, and not cancelling the prescription once Kelly's kidney problems were discovered.  Kelly called multiple expert witnesses who testified that Austin's prescribing Kelly's medication without the proper lab work was a breach of the standard of care and the proximate cause of his kidney injuries and dialysis.  The Government called expert witnesses to refute Kelly's breach-of-duty and causation contentions.

The court found for the Government on both issues.  The court, basing its reasoning in part on Kelly's expert's testimony, found Austin did not breach the standard of care in not recognizing Kelly's kidney impairment or in prescribing blood-pressure and gout medications before waiting for the lab results.  As to not reconciling the lab-test results, the court found "Kelly was told to get lab work done," and "Kelly chose to ignore [Austin's] instructions" as to lab work and attending his follow-up appointment.  The court stated that "[t]he standard of care does not require a provider to take extraordinary steps to force a patient to comply with the provider's instructions."  In also finding the Clinic's actions were not the proximate cause of Kelly's injuries, the court credited the Government's expert's testimony that "Kelly would have required dialysis" regardless and "if the drugs had any impact on Kelly's renal function, the effect was transient and did not cause Kelly's Chronic Kidney Disease." Kelly timely appealed.

---

[1] Kelly's wife, Pamela Kelly, filed a derivative loss-of-consortium claim as well.

No. 17-60227

DISCUSSION

Kelly asserts the district court erred in finding the Clinic did not breach the standard of care and proximately cause his injuries. A court's findings of fact are reviewed for clear error. *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015). A finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *In re Luhr Bros., Inc.*, 157 F.3d 333, 338 (5th Cir. 1998)). In addition, in reviewing findings from bench trials, we extend "greater deference" to the court's credibility determinations. *Id.* (citation omitted). "[T]his court may not second-guess the district court's resolution of conflicting testimony or its choice of which experts to believe." *Grilleta v. Lexington Ins. Co.*, 558 F.3d 359, 365 (5th Cir. 2009).

The Federal Tort Claims Act permits recovery "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, we apply the Mississippi medical-malpractice standard, which requires the plaintiff to show:

> (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant's breach of duty was a proximate cause of the plaintiff's injury, and; (4) the plaintiff was injured as a result.

No. 17-60227

*McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 578 (Miss. 2011) (quoting *Delta Reg'l Med. Ctr. v. Venton*, 964 So. 2d 500, 504 (Miss. 2007)). Both the standard of care and proximate cause must be proven by expert testimony. *Id.*

## I.    *Breach of the standard of care*

Mississippi requires medical providers to adhere to a national, objective standard of care, established by expert testimony. *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (Miss. 2009). "Given the circumstances of each patient, each physician has a duty to . . . treat . . . each patient, with such reasonable diligence, skill, competence, and prudence as are practiced by minimally competent physicians in the same specialty or general field of practice throughout the United States." *Id.* (quoting *Palmer v. Biloxi Reg'l Med. Ctr.*, 564 So. 2d 1346, 1354 (Miss. 1990)).

On appeal, Kelly discusses the Clinic's alleged breaches as being two-fold: Austin and the Clinic breached the standard of care first by prescribing an improper combination of medications and second by failing to reconcile Kelly's lab-test results. We do not analyze the validity of the district court's findings as to whether there was a breach of the standard of care. The issue largely turns on whether it was Kelly or instead the Clinic and its staff who were responsible for assuring Kelly had scheduled lab work completed, as the results of the tests might have indicated the prescribed medication was inappropriate. Regardless of the district court's fact finding on that point, another part of Kelly's burden was to introduce evidence that any negligence on the part of the defendants was the cause of his claimed injuries. *See McGee*, 59 So. 3d at 578. As we describe, he failed to do so. Because "we may affirm the district court's decision on any grounds supported by the record," we turn to that issue. *Phillips ex rel. Phillips v. Monroe Cnty.*, 311 F.3d 369, 376 (5th Cir. 2002).

## II.    *Proximate causation*

Under Mississippi law, "a plaintiff claiming medical malpractice must show that there is a causal connection between the injury and the defendant's conduct or acts, and this requires expert medical testimony." *McMichael v. Howell*, 919 So. 2d 18, 24 (Miss. 2005).

The district court credited the Government's experts in finding Kelly had chronic kidney disease and would have required dialysis regardless of the medication that Austin and the Clinic prescribed. The Government's expert nephrologist, Dr. Fine, testified Austin's prescribing Kelly medication did not cause Kelly's kidney failure because Kelly had chronic kidney disease before he ever entered the Clinic, most likely resulting from his HIV. Dr. Fine testified that any rise in creatinine levels attributable to the prescription medications was transient, as indicated by Kelly's creatinine levels not returning to normal during his nine-day stay. Dr. Smith, Kelly's treating physician, also testified for the Government. He mirrored Dr. Fine's testimony. Although Dr. Smith originally diagnosed Kelly with an acute kidney injury, he testified Kelly had chronic kidney disease before he entered the Clinic.

The district court was presented with conflicting testimony. Because "this court may not second-guess the district court's resolution of conflicting testimony or its choice of which experts to believe," we cannot overturn the district court's finding on proximate cause. *Grilleta*, 558 F.3d at 365. The district court's findings as to proximate causation were not clearly erroneous.

AFFIRMED.