ISHEE, J., for the Court.
 

 ¶ 1. Following a divorce in 2002, James Wallace filed a motion to modify his alimony payments in light of his ex-wife’s cohabitation with another man. The Chancery Court of Lincoln County denied James’s motion. The chancery court found that although Donna Wallace had cohabited with Terrance Hogan for a year, she was able to rebut the presumption of mutual financial support. Aggrieved by the chancery court’s ruling, James timely appealed. He argues that the chancery court erred when it found that Donna successfully rebutted the presumption of mutual support, and he asks that his alimony payments be terminated.
 

 ¶2. We find that the chancellor erred in finding that Donna successfully overcame the presumption of mutual economic support between her and Terrance. Accordingly, we reverse the decision of the chancery court and render judgment terminating James’s alimony payments. We remand this case to the chancery court on the issue of whether the termination is effective upon the date that James filed his petition.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. In a decree of divorce entered on March 18, 2002, the Chancery Court of
 
 *574
 
 Lincoln County granted a divorce to James and Donna. The chancery court ordered James to pay Donna lump-sum alimony of forty percent of his annuity payments that he was to receive in 2004, 2009, 2014, and 2019. Additionally, the chancery court ordered James to pay permanent periodic alimony in the amount of $700 per month.
 

 ¶ 4. Upon learning that Donna had begun cohabiting with another man, James filed a motion to modify his alimony payments. In the motion, James asked the chancery court to terminate his alimony obligations because Donna and Terrance were living together and supporting each other financially. Donna admitted that she and Terrance had been living together since December 2006, but she denied James’s allegation of mutual financial support.
 

 ¶ 5. The chancery court held a hearing on the matter of modification of alimony on December 11, 2007. Only two witnesses testified — Donna and James. Donna said that she and Terrance met in an online gaming room in September 2006. He moved to Bogue Chitto, Mississippi in December 2006 and began living in the former marital home with Donna. According to Donna, she and Terrance agreed to an arrangement where he would take care of any yard work or outside work and any repairs on or around the house in exchange for Donna providing him a place to stay. Donna said she made this arrangement because she was unable to do a number of things around the house.
 

 ¶ 6. Since Terrance began living with Donna, he had done the following work around the house: fixed the plumbing to allow the bathtub to drain, fixed a leaky toilet, dug up and cleaned pipes to fix an overflowing washing machine, cleared the hedges — a project that was still ongoing at the time of trial, tore down an old barn, cut down a dead tree that hung over the house, built a burn pit, cleaned the flower beds, treated the concrete in the pump house to keep out moisture, built steps to get into a metal building, built a picnic table, built a flower bed around a metal building, and installed light fixtures in three rooms. Additionally, he regularly mowed the grass and cleaned the yard. Donna testified that she had been quoted a price of $100 to mow her yard, which would work out to $200 per month if she had to pay someone to mow it twice a month. Donna also said that Terrance was going to paint the house and replace the shingles on her house once she had the money to buy the necessary supplies.
 

 ¶ 7. When Terrance left Wisconsin and came to Mississippi, he did not have a job, and he did not find a job until March 2007. However, Donna said that he brought money with him from Wisconsin and that she did not support him financially while he was unemployed. Terrance continued working from March until August or September 2007, at which point he again became unemployed. At the time of trial, Terrance was working one day a week, making $80 per month at Donna’s son-in-law’s mother’s antique store, but he was in search of employment. Donna also worked the same shift at the antique store, making $80 a month.
 

 ¶8. Donna admitted that she and Terrance had sexual relations about once every two weeks, but she denied that they were in any type of relationship. As the chancellor pointed out in his bench ruling, there was no evidence that the parties shared a bedroom. Donna testified that Terrance would have moved to Louisiana to stay with a friend, but he agreed to stay with her after her health deteriorated. They would occasionally go grocery shopping together, but they would pay for their own groceries and cook their separate
 
 *575
 
 meals. Besides the groceries in the refrigerator, they kept their groceries separate. They had only been to two social functions together in the year that Terrance had been in Mississippi. Once, Terrance came with Donna to her daughter’s birthday party at a restaurant. Another time, they went to a Fourth of July barbecue together in Kentwood, Louisiana. Donna did not buy Terrance a birthday present or a Christmas present.
 

 ¶ 9. Donna further testified that she received financial support from her daughter, Martha Guy (“Marty”). Since June 2007, after James filed the motion to terminate alimony, he had not paid Donna any alimony, so Marty has been paying Donna’s bills for her. Donna’s only other source of income was the $80 per month from the antique shop and $126 per month in food stamps.
 

 ¶ 10. Besides Donna, James called no other witnesses in support of his motion. Donna’s attorney called James to testify during her case. James testified that he had no evidence concerning Donna’s financial situation, and he could not dispute any of the testimony given by Donna.
 

 ¶ 11. On December 27, 2007, the chancery court dismissed James’s motion. In its order, the chancery court found that Donna and Terrance had been living together since December 2006 through the time of trial. Nevertheless, the chancery court found that Donna had successfully rebutted any presumption that she and Terrance financially supported each other and that James had failed to prove that a de facto marriage existed between Donna and Terrance. Lastly, the chancery court ordered James to pay Donna $4,900, representing the seven months of payments he failed to make while this case was pending in the chancery court. James timely appeals from the chancery court’s order.
 

 STANDARD OF REVIEW
 

 ¶ 12. “This Court will not ‘disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.’ ”
 
 Burrus v. Burrus,
 
 962 So.2d 618, 621 (¶ 15) (Miss.Ct.App.2006) (quoting
 
 Crow v. Crow,
 
 622 So.2d 1226, 1228 (Miss.1993)).
 

 DISCUSSION
 

 ¶ 13. James cites only one alleged point of error. He admits that the chancellor applied the correct law, but he claims that the chancellor misapplied the facts in reaching the conclusion that there was no mutual support between Donna and Terrance. James did not contest the chancellor’s finding that he faded to prove that a de facto marriage existed between Donna and Terrance. Our review is, therefore, limited to whether it was error for the chancellor to find that Donna overcame the presumption of mutual financial support that arose due to her cohabitation with Terrance.
 

 ¶ 14. “Periodic alimony may be terminated based on cohabitation or a de facto marriage.”
 
 Id.
 
 at (¶ 17). Furthermore, “proof of cohabitation creates a presumption that a material change in circumstances has occurred.”
 
 Scharwath v. Scharwath,
 
 702 So.2d 1210, 1211(¶7) (Miss.1997). “This presumption will shift the burden to the recipient spouse to come forward with evidence suggesting that there is no mutual support within his or her de facto marriage.”
 
 Id.
 
 The application of such a presumption was a modification to the existing law concerning alimony.
 
 Id.
 
 In
 
 Scharwath,
 
 the supreme court reversed and remanded the case to allow the chancellor to consider whether the presumption of mutual support had been overcome.
 
 Id.
 
 at 1212(¶ 8).
 

 
 *576
 
 ¶ 15. The presumption of mutual support was applicable in this case because the parties stipulated to the fact that Donna and Terrance had been cohabiting for approximately one year at the time of trial. However, the present case is distinguishable from
 
 Scharwath
 
 because the chancellor applied the presumption and also considered whether Donna managed to overcome it. In doing so, the chancellor specifically found that she successfully overcame the presumption.
 

 ¶ 16. However, James argues that the chancellor failed to assign value to the in-kind services that Terrance provided to Donna, which he argues constituted support of Donna. He cites
 
 Tedford v. Dempsey,
 
 437 So.2d 410, 422 n. 11 (Miss.1983) in support of his argument. In
 
 Tedford,
 
 the supreme court found that a spouse’s in-kind service contributions should be assigned a “reasonable monetary value” and considered as part of the contribution to child support.
 
 Id.
 

 ¶ 17. In this case, the chancellor recognized that Terrance performed a significant amount of work around the house for Donna. Despite that work, the chancellor found that the evidence did not establish that Donna and Terrance provided mutual financial support to trigger a modification of alimony. Instead, the chancellor found that Terrance’s services at Donna’s house were performed as part of an agreement that he had with Donna — that Terrance could stay at the house in exchange for doing yard work and other things around the house that Donna was unable to do.
 

 ¶ 18. The burden was on Donna to prove that she and Terrance did not mutually support each other. In this case, we do not find that the evidence that Donna presented was sufficient to overcome the presumption. To the contrary, the majority of Donna’s testimony indicated that she and Terrance did support each other. Their situation was the epitome of mutual financial support — Donna provided Terrance a place to live, and Terrance took care of her and did most, if not all, of the yard and house work. Each provided a sendee, and the other received the value of that service. Terrance was also unemployed for a good portion of the time he had lived with Donna. At the time of trial, they worked together at the same job, with Terrance working one day per week and earning, at most, $80 per month. They also admitted to being in a sexual relationship, and they went to a couple of social outings together.
 

 ¶ 19. While the chancellor has much discretion in deciding family-law matters, we find that the evidence in the present case overwhelmingly points to the conclusion that Donna and Terrance cohabited and mutually supported each other. Therefore, we find that the chancery court manifestly erred in finding that Donna and Terrance’s arrangement — living together, engaging in a sexual relationship, and financially supporting each other — did not amount to mutual support. We reverse the chancery court’s judgment and render judgment terminating James’s obligation to pay Donna permanent periodic alimony. James’s obligation to pay Donna the ordered lump-sum alimony payments remains intact because such an award is already vested and, therefore, nonmodifiable.
 
 West v. West,
 
 891 So.2d 203, 212(¶22) (Miss.2004) (citations omitted). Furthermore, finding that the chancellor has the authority to decide whether to make the termination of alimony retroactive to the date that James filed his petition, we remand the case to the chancery court for such a determination.
 
 See Shearer v. Shearer,
 
 540 So.2d 9, 12 (Miss.1989);
 
 Austin v. Austin,
 
 981 So.2d 1000, 1006-07(¶ 23) (Miss.Ct.App.2007).
 

 
 *577
 
 ¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF LINCOLN COUNTY IS REVERSED AND RENDERED IN PART AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 CARLTON, J., NOT PARTICIPATING.