MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Scott M. Tanner was convicted in the Circuit Court of Jackson County of sexual battery. The trial court sentenced Tanner to twenty years in the custody of the Mississippi Department of Corrections, with fourteen years to serve and six years of post-release supervision. Aggrieved, Tanner appeals, arguing that: the jury’s verdict is against the overwhelming weight of the evidence; the trial court erred in amending the indictment; and the trial court erred in denying Tanner’s motion to suppress an audiotape recording of a telephone conversation between Tanner and the alleged victim. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. At trial, Timothy Lewis
 
 [1]
 
 testified that at the time in question, he lived with his wife, Irene Lewis, and their four children in Vancleave, Mississippi. Tanner, twenty-nine years of age and a longtime friend, had lived with the family for several years. On April 28, 2004, Timothy decided to wake his children up a few minutes earlier than he customarily did. When he went into the girls’ bedroom, he noticed that his daughter, A.L., who had just turned twelve years of age, was not in her bunk. Timothy then checked the bathroom and the boys’ bedroom, where Tanner and the older son slept, but Timothy did not see her there either. At that point he checked the bathroom again to make sure. When he turned around, he saw A.L. coming out of the boys’ bedroom. When he asked A.L. what she had been doing, she replied that she “really didn’t know.” A.L. said she had awoke on the floor. Remembering that A.L. had not been on the floor when he looked for her initially, Timothy “got suspicious.” At that point he took her into his wife’s bedroom, where he and his wife questioned A.L.
 
 *766
 
 further. A.L. said nothing more at that time.
 

 ¶ 3. Later that morning, Irene checked her daughter out of school, took her back to the family home, and “started talking to her and got different answers out of her.” Irene then called her husband and advised him of what she had learned. Timothy “told her to tell [Tanner] he needed to leave for awhile [sic]” until they “figured everything out.”
 

 ¶ 4. That day or the next, Timothy installed a recording device on his home telephone line. Timothy testified that he wanted to be “sure what really happened” before he accused Tanner of wrongdoing. Soon thereafter, using a cellular phone previously given to him by Timothy, Tanner phoned A.L., and Timothy recorded the conversation and turned it over to law enforcement.
 

 ¶ 5. A compact disc containing a redacted recording of this conversation was ultimately entered into evidence and played for the jury.
 
 [2]
 
 In the ten-minute conversation, Tanner asked A.L. whether she was “still [his] daughter” and repeatedly told A.L. “I love you” and “I miss you.” A.L. stated that “[her parents] already knew” and “[Irene] could tell by the way I was developing.” A.L. also stated that she had told her mother after being threatened with “boot camp.” Tanner asked what several individuals had said about the incident. A.L. then told Tanner “you should have just told [Timothy]” and asked “why didn’t you just tell him?” Tanner replied that he did not know why and ended the conversation a few moments later.
 

 ¶ 6. Dr. Eric Lucas also testified for the State. He was accepted by the court as an expert in the field of emergency medicine. Dr. Lucas testified that he had examined A.L., who was complaining of sexual assault, on May 13, 2004. A.L. stated that a family friend had assaulted her “for the last month and a half,” beginning on March 21, and that the assaults had “occurred four to five times thereafter,” with the last incident occurring about a week previously. Ultimately, A.L. was examined by a sexual assault nurse examiner, who provided her notes to Dr. Lucas and discussed the case with him. The notes stated that “the hymen was not intact.”
 

 ¶ 7. A.L. testified that she was between eleven and twelve years old at the time in issue. She had developed a close relationship with Tanner after he had moved into the family’s house, describing Tanner as “like a dad.” Tanner routinely slept in her brother’s room, but he was usually alone because the brother spent most of his time at their grandmother’s house. A.L. slept in the next room with her sisters. The parents’ bedroom was on the other side of the house, separated from the children’s area by the living room, dining room, and kitchen.
 

 ¶ 8. A.L. did not remember the date that this incident occurred, but she remembered that it was a school day, and that her father had been looking for her while she was hiding behind the dresser at the end of Tanner’s bed. When questioned by her father that morning, she told him that she “had just fallen asleep in there.” He continued to question A.L. about whether someone had touched her inappropriately. She finally told him that one of her cousins had done so, although she knew at the time this was not true. When asked why she had lied, A.L. testified: “Because [Tanner] had told me not to tell my par
 
 *767
 
 ents. Whatever I did, not to tell them because he would get in a lot of trouble.”
 

 ¶ 9. A.L. went to school, but her mother picked her up shortly afterward and took her home, where A.L. “told her that it wasn’t my cousin. That me and Scott did have intercourse.”
 

 ¶ 10. A.L. testified further about what had occurred early that morning. Between midnight and 3:00 a.m., Tanner “had thrown something” at her to wake her up. She went into his room, where he had been alone. They went “[s]traight to the bed” where they “had intercourse.” A.L. testified explicitly, “[H]e put his penis inside my vagina.... He used his fingers too.” A.L. testified that this had happened “[fjour or five times” previously, beginning approximately one month before.
 

 ¶ 11. Irene testified that, at the time in question, Tanner had been living in the family’s house for about five years. The morning that Timothy had found their daughter in Tanner’s bedroom, Irene picked A.L. up from school and asked her “about what was going on.” A.L. told Irene what Tanner “had done to her.”
 

 ¶ 12. Tanner’s mother and sister testified for the defense. Both stated that Tanner was suffering from kidney stones and had been taken to the hospital on April 27. Rather than returning to the Lewis household, Tanner had convalesced at his mother’s home until April 30.
 
 [3]
 

 ¶ 13. Tanner testified that he had stayed at his mother’s home from April 27 to April 30, where he suffered from a fever and was in great pain as a result of the kidney stones. Tanner’s attorney introduced medical records detailing Tanner’s treatment. Tanner also denied having sexual intercourse with A.L., stating that she “was like a daughter to me.”
 

 ¶ 14. Tanner was ultimately convicted and sentenced. He now appeals from that judgment, arguing three issues.
 

 DISCUSSION
 

 1. Amended Indictment
 

 ¶ 15. The indictment stated that the crime was committed “on or between March 21, 2004[,] to April 28, 2004.” At the conclusion of its case-in-chief, the State moved to amend the indictment to conform to the proof presented at trial. The State wished to extend the date of the offense to between March 21, 2004, and April 30, 2004. Tanner objected, and the trial court reserved its ruling on the motion.
 

 ¶ 16. After both parties rested, the trial court took up the issue again:
 

 [THE COURT]: Let me go back to the issue of the amendment of the indictment. I think everybody has agreed to amend it to read “on or about April 30th,” is that correct?
 

 [THE PROSECUTOR]: 2004.
 

 [THE COURT]: 2004.
 

 [DEFENSE COUNSEL]: I would like to say the 27th through the 30th.
 

 [THE COURT]: Through the 30th. That time span?
 

 [DEFENSE COUNSEL]: Yes.
 

 [THE COURT:] That’s what I thought it should be, based on the testimony.
 

 The State then argued for an amendment to “on or about April 30th” only, stressing the “on or about” language of the amendment, but the trial court rejected that ar
 
 *768
 
 gument. The jury was ultimately instructed that it could convict if the State proved sexual battery “on or about April 27th, 2004[,] to April 30th, 2004.”
 

 ¶ 17. On appeal, Tanner argues that the trial court erred in amending the indictment because it exposed him to testimony concerning prior bad acts now uncharged, specifically, AL.’s testimony that she had been sexually assaulted “four or five times” in the weeks preceding the final incident, the exact date of which she could not recall. The testimony of her father and mother indicated that the final incident occurred on either April 27 or April 30, respectively.
 

 ¶ 18. In reviewing the record, we find that this issue is without merit. While Tanner did initially object to the State’s motion to amend the indictment, he later not only consented to an amendment, but argued for the specific date range that the trial court ultimately adopted. This appears to have been undertaken to bolster his defense that Tanner was not present in the Lewis household on the dates alleged by the mother and father. Following that strategy’s failure, Tanner cannot now complain that the trial court wrongfully amended the indictment. This issue is without merit.
 

 2. Motion to Suppress the Telephone Recording
 

 ¶ 19. Tanner argues that the trial court erred in denying his motion to suppress the audiotape, recorded by Timothy, of a conversation between Tanner and A.L. Tanner argues that the tape was “manufactured” evidence, so suspect and suggestive that its admission amounted to a violation of Tanner’s rights under the United States Constitution.
 
 [4]
 
 Tanner, however, cites no relevant authority supporting this proposition. As such, this argument is barred from our review.
 
 Byrom v. State,
 
 863 So.2d 836, 863(¶ 84) (Miss.2003). Furthermore, Tanner substantiates this argument only with his assertions that the prosecution was “manufactured” by A.L.’s parents. He cites nothing in the record that could render the recording constitutionally suspect. This issue is without merit.
 

 3. Weight of the Evidence
 

 ¶ 20. Tanner argues that the guilty verdict is contrary to the overwhelming weight of the evidence.
 

 ¶ 21. The supreme court has elaborated upon appellate review of the weight of the evidence supporting a jury’s verdict, stating:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the' evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any
 
 *769
 
 more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Bush v. State,
 
 895 So.2d 836, 844(¶18) (Miss.2005) (internal citations and quotations omitted).
 

 ¶ 22. In reviewing the evidence we have discussed above in the light most favorable to the verdict, we do not find that Tanner’s conviction is against the overwhelming weight of the evidence. A.L. testified that she had been repeatedly raped by Tanner, and this was corroborated by her father’s testimony and a medical examination. Furthermore, we have reviewed the audiotape recording played for the jury. While Tanner made no express admissions of guilt, when confronted with the allegations he did not deny them but simply stated that he did not know why he had not admitted them to A.L.’s father. The medical records offered by the defense established only that Tanner received medical attention relating to a kidney stone problem around the time of the final incident. Tanner’s denials and his testimony, as well as his mother’s and sister’s testimonies, that Tanner spent those nights at his mother’s home, created a fact issue, but we do not find the jury’s verdict “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 This issue is without merit.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FOURTEEN YEARS TO SERVE AND SIX YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J, LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . We substitute fictitious names and initials to protect the identity of child victims of sexual abuse.
 

 [2]
 

 . References to accusations against Tanner by another individual were edited out of the recording that was played to the jury.
 

 [3]
 

 . Asked whether she remembered Tanner's suffering from kidney stones during this time period, Irene testified that she had taken him to the hospital and stayed with him until his mother and sister arrived. After the problem resolved itself, Tanner returned to the Lewis home and appeared to be "okay.” Irene testified that she believed this occurred approximately one week before Tanner left the Lewis household.
 

 [4]
 

 . Tanner does not argue that the admission of the audiotape was an abuse of discretion under the Mississippi Rules of Evidence. While Tanner does argue Mississippi-law grounds in his reply brief on appeal, his failure to do so in his principal brief procedurally bars this issue from our review.
 
 Sanders v. State,
 
 678 So.2d 663, 669-70 (Miss. 1996) (“We will not consider issues raised for the first time in an appellant's reply brief.") (citations omitted).