MAXWELL, J.,
for the Court:
¶ 1. Ivey Burton and Hilda Burton requested the Attala County Chancery Court partition a 119.54-acre parcel of land in which they owned an undivided interest. Several relatives, including Rosa Robinson and Willie Washington, who also owned an interest, objected to the land being partitioned. The chancellor ultimately ordered a partition sale, finding it was in the best interest of all property owners. He reasoned this was the only practical option given the numerous shares into which the land was divided and the small size of many of the interests. We find no manifest error in this decision.
¶ 2. Robinson[1] additionally claims the chancellor was biased and held racial prejudices against her. Though Robinson never sought to have the chancellor recuse himself from the case, our plain-error review of the record reveals no evidence of bias to warrant reversal.
¶ 3. Finding no merit to Robinson’s remaining arguments, we affirm.
*663 FACTS AND PROCEDURAL HISTORY
¶ 4. The parties in this appeal all held an interest in a 119.54-acre parcel of land.[2] There were a total of thirty-nine interest holders. The Burtons collectively owned approximately forty-eight percent of the land, while every other person owned five percent or less. Robinson owned less than two percent of the parcel, and Washington owned less than one percent. Many others owned less than one percent.
¶ 5. Following a three-day hearing, the chancellor ordered the land and the timber on it sold and the proceeds divided among the interest holders. He concluded this was the only practical option that “would best promote the interest of all undivided interest owners.” The chancellor recognized that some of the heirs, including Robinson, desired to retain fee-simple ownership. But the chancellor found this task “to be next to impossible based on ... the various minute interests owned by the other thirty-eight (38) undivided interest owners.” The chancellor concluded that separating thirty-nine tracts of varying size would be an extremely expensive task considering that each individual tract would have to be surveyed. He further noted the timber varied “in quantity and quality throughout the 119.54 acre tract.”
¶ 6. After the chancellor entered a judgment directing the sale of the land, Robinson filed a motion in the Mississippi Supreme Court to stay the sale. The supreme court denied the stay, but granted Robinson leave to file for a stay in the chancery court. However, by the time Robinson filed her January 6, 2009, motion to stay in the chancery court, the land and timber had already been sold approximately two weeks earlier on December 22, 2008.
¶ 7. Robinson proceeds pro se on this appeal as she did at the trial level.[3] She alleges numerous errors, many of which are unclear. But from our review, we discern that the crux of her arguments center on (1) the chancellor’s alleged improper disposal of the property; (2) the chancellor’s alleged impartiality and racial bias; and (3) the chancellor’s refusal to grant a continuance.
¶ 8. Concerning the second issue, the Burtons, represented by counsel, filed a motion to strike Robinson’s brief. They argue the brief should be stricken because of its highly disrespectful overtures toward the chancellor. See M.R.A.P. 28(k). They additionally allege Robinson’s appeal is frivolous and request damages sustained as a result. See M.R.A.P. 38. By order entered December 9, 2009, the supreme court found the motion should be “passed for consideration with the merits of the appeal.” Thereafter, the supreme court assigned the appeal to this court.
STANDARD OF REVIEW
¶ 9. We employ the familiar “manifest error” standard of review to a chancellor’s decision to order a partition sale of land. Cathey v. McPhail & Assoc., Inc., 989 So.2d 494, 495 (¶ 3) (Miss.Ct.App.2008). Under this standard, we will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong or clearly erroneous, or the chancellor applied an improper legal standard. Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009). In conducting *664 this review, we are restrained from substituting our own judgment for that of the chancellor, even if we disagree with his or her findings of fact and would arrive at a different conclusion. Coggin v. Coggin, 837 So.2d 772, 774 (¶3) (Miss.Ct.App.2003). But when reviewing a chancellor’s interpretation and application of law, our standard of review is de novo. Tucker v. Prisock, 791 So.2d 190, 192 (¶ 10) (Miss.2001).
DISCUSSION
I. Sanctions
¶ 10. We first address the Bur-tons’ request that we sanction Robinson by striking her brief and deeming her appeal frivolous.
¶ 11. The Burtons claim that Robinson’s brief should be stricken under Rule 28(k) of the Rules of Appellate Procedure. Rule 28(k) provides that “[a]ny brief containing language showing disrespect or contempt for the trial court will be stricken from the files, and the appropriate appellate court will take such further action as it may deem proper.” Though the manner in which Robinson chooses to cast her accusations against the chancellor arguably toes the line of Rule 28(k), we decline to sanction Robinson by striking any part of brief. See Young v. Benson, 828 So.2d 821, 824 (¶ 11) (Miss.Ct.App.2002) (refusing to strike pro se appellant’s brief, which may have asserted “baseless claims of error, including that the chancery clerk violated her civil rights ... [and that] the trial judge was not impartial”).
¶ 12. The Burtons also seek to invoke Mississippi Rule of Appellate Procedure 38, which allows us to “award just damages and single or double costs to the appellee” if we find an appeal is frivolous. The supreme court “has equated the Rule 38 frivolousness to the definition of the same concept in Mississippi Rule of Civil Procedure 11.” Harris v. Harris, 988 So.2d 376, 380 (¶ 16) (Miss.2008). The inquiry turns on “whether a reasonable person would have any hope for success.” Id. This objective inquiry is determined from the vantage point of a reasonable person in the litigant’s position when he or she filed the claim. Mark S. Bounds Realty Partners, Inc. v. Lawrence, 34 So.3d 1224, 1228 (¶ 12) (Miss.Ct.App.2010). Pro se litigants are subject to the same sanctions as represented parties. Dethlefs v. Beau Maison Dev. Corp., 511 So.2d 112, 118 (Miss.1987).
¶ 13. The Litigation Accountability Act also provides for sanctions if the court, upon request or its own motion, finds that a claim is brought “without substantial justification.” Miss.Code Ann. § 11-55-5(1) (Rev.2002). The Legislature defined this phrase to include claims that are “frivolous, groundless in fact or in law, or vexatious, as determined by the court.” Miss. Code Ann. § ll-55-3(a) (Rev.2002). The supreme court has held that the Act and Rule 11 are not conflicting; rather each augments the other. See Stevens v. Lake, 615 So.2d 1177, 1184 (Miss.1993).
¶ 14. Though some of Robinson’s arguments could perhaps be deemed frivolous, we decline to impose sanctions. Our supreme court has found it inappropriate to sanction a party who has presented a justi-ciable claim, where the other party incurred no additional expense by defending other exaggerated claims. Dethlefs, 511 So.2d at 118. Robinson’s primary argument is that the chancellor improperly disposed of her family property. We cannot agree with the Burtons that Robinson could not have reasonably hoped to prevail on this claim. This is especially so given the strong preference against a partition *665 sale.[4]
¶ 15. Further, while Robinson’s brief does contain seemingly exaggerated and unsupported claims, the Burtons have not specifically identified the assertions they deem frivolous. Nor have they explained the prejudice they have suffered as a result of defending the appeal. Indeed^ the Burtons do not even attempt to respond to most of Robinson’s allegations but instead focus almost exclusively on the partition sale. For these reasons, we find sanctions inappropriate.
II. Procedural Bars
¶ 16. Before addressing Robinson’s arguments, we note Robinson cites no legal authority in her appellate brief. This omission alone serves as a recognized procedural bar to our consideration of her claims.[5] Dampier v. State, 973 So.2d 221, 228 (¶ 20) (Miss.2008). She further fails to specifically identify assignments of error as required by our appellate rules, which we have also held to be a procedural bar. Reed v. State, 987 So.2d 1054, 1056-57 (¶¶ 6-8) (Miss.Ct.App.2008) (citing M.R.A.P. 28(a)(8)).
¶ 17. Our supreme court has emphasized that “[p]ro se parties should be held to the same rules of procedure and substantive law as represented parties.” Dethlefs, 511 So.2d at 118. But at the same time, the supreme court has instructed that we “credit not so well pleaded allegations so that ... meritorious [claims] may not be lost because inartfully drafted.” Ivy v. Merchant, 666 So.2d 445, 449 (Miss.1995). Filings of pro se litigants in criminal cases are held “to less stringent standards than [those] drafted by lawyers.” McFadden v. State, 580 So.2d 1210, 1214 (Miss.1991). And we afford this same deference to pro se litigants in civil cases. Zimmerman v. Three Rivers Planning and Dev. Dist., 747 So.2d 853, 856 (¶ 6) (Miss.Ct.App.1999).
¶ 18. With these rules in mind, we choose to proceed in spite of Robinson’s procedural defaults. But our review is limited to “any self-evident error for which no authority would be necessary.” Kellar v. Miss. Employment Sec. Comm’n, 756 So.2d 840, 842 (¶6) (Miss.Ct.App.2000) (citing Johnson v. State, 154 Miss. 512, 513, 122 So. 529 (1929)) (holding appellate court is under no duty to consider allegations in pro se litigant’s brief which contains no legal authority). We now turn to Robinson’s primary arguments.
III. Partition Sale
¶ 19. Partition is a statutory right. Mosby v. Mosby, 962 So.2d 119, 122 (¶ 8) (Miss.Ct.App.2007). Cotenants have an absolute right to the partition of property, with one statutory exception not applicable here. See id. (citing Miss.Code Ann. § 91-1-23 (Rev.2004)). Any party in interest may institute an action for a partition in kind or partition sale in the chancery court.[6] Miss.Code Ann. § 11-21-5 (Rev.2004).
¶ 20. Mississippi Code Annotated section 11-21-11 (Rev.2004) provides for a partition sale where a chancellor determines: (1) “a sale of the lands, or any part *666 thereof, will better promote the interest of all parties than a partition in kind”; or (2) “an equal division cannot be made[.]” Only one of these two requisites must be satisfied for a partition sale to be proper. Fuller v. Chimento, 824 So.2d 599, 602 (¶ 9) (Miss.2002).
¶21. There is a preference for partition in kind over partition sale. Fuller, 824 So.2d at 602 (¶ 12). And chancellors have “no authority to decree a sale unless the statutory requisites are ‘clearly’ met and a ‘substantial reason’ exists for choosing partition by sale over partition in kind.” Georgian v. Harrington, 990 So.2d 813, 816 (¶ 9) (Miss.Ct.App.2008) (quoting Unknown Heirs at Law of Blair v. Blair, 601 So.2d 848, 850 (Miss.1992)). The burden is on the party seeking a partition sale to prove the statutory requisites are met. Overstreet v. Overstreet, 692 So.2d 88, 90-91 (Miss.1997). “The propriety of a partition sale or partition in kind is determined on a case-by-case basis.” Fuller, 824 So.2d at 601 (¶ 9).
¶ 22. In Cathey, the chancellor ordered a partition sale based on considerations similar to those involved here. The chancellor found a partition sale appropriate because approximately 300 heirs owned various interests in a 160-acre parcel of land, some of which were extremely small. Id. at 495-96 (¶¶ 2, 7). He also found there would be problems with access if the land were divided; the land was not uniform in its desirability; and the partition expenses could not be covered except through sale of the property. Id. at 496 (¶ 7). This court found no manifest error in the chancellor’s decision that a partition sale was in the best interest of all parties. Id.
¶ 23. In Fuller, our supreme court determined that in addition to being in the best interest of all interest holders, the requested partition in kind was unfeasible because of “the configuration of the buildings and the odd shape of the property[.]” 824 So.2d at 603 (¶ 13). The property could not be equally divided where the property line did not split one of the seven buildings on the property. Id. Despite the appraisers’ conclusion that the buildings contributed nothing to the property value, the supreme court concluded the buildings were usable, and therefore an equal division could not be achieved. Id.
¶ 24. Here, the chancellor considered dividing the 119.54-acre tract in which thirty-nine heirs owned an interest. He recognized Robinson and other co-owners desired to retain fee-simple ownership of their undivided shares. But the chancellor found dividing the land in this manner unfeasible, given the numerous undivided interests where many owned less than one percent of the parcel. The chancellor also noted that surveying the land would be an expensive endeavor because each individual tract would have to be surveyed. He further pointed to evidence showing that the timber was not uniform throughout the tract and that some of the land had road frontage while other portions did not. Based on these reasons, he concluded a partition in kind was unfeasible, and a partition sale was in the best interest of all heirs.
¶ 25. Considering the characteristics of the land, the varying sizes of the many individual interests, and the feasibility and realities underlying a division of the tract, we draw from Cathey and Fuller and find no error in the chancellor’s determination that a partition sale was the best alternative for all concerned. We likewise find that the statutory requisites for ordering a partition sale were clearly met.
IY. Impartiality of the Chancellor
¶ 26. Robinson makes various allegations centered on the chancellor’s tempera *667 ment and partiality. She claims: (1) he was disrespectful to her and shouted at her; (2) he told her that he was “going to show [her] some Mississippi justice”; (3) he “violated [her] civil rights”; and (4) he was biased against her and conspired with the Burtons to prevent her from keeping her property. She further suggests the chancellor held racial prejudices against her.
¶ 27. Robinson makes serious accusations of impropriety, which we give our utmost attention. Yet in considering these accusations, we are confronted with the fact that at no point prior to or during the trial did she request that the chancellor recuse himself. Nor did she contemporaneously object to the chancellor’s purportedly disrespectful comments. Our supreme court has held that failure to move to recuse or to contemporaneously object to alleged impropriety procedurally bars this issue from our review. Wal-Mart Stores, Inc. v. Frierson, 818 So.2d 1135, 1141 (¶ 10) (Miss.2002). In Frierson, the supreme court reviewed a litigant’s later claims of judicial impropriety for plain error. Id. at (¶¶ 10-12). The supreme court relied on the well-established rule that “if no contemporaneous objection is made, the error, if any, is waived.” Id. (quoting Smith v. State, 797 So.2d 854, 856 (¶7) (Miss.2001)). Other jurisdictions have applied this same rationale and held that claims of judicial impropriety or racial bias not properly raised in the trial court are procedurally barred. See Harbin v. Roberts, 305 Ga.App. 107, 699 S.E.2d 36, 38-39 (2010); In re Key, 182 N.C.App. 714, 643 S.E.2d 452, 456 (2007); State v. Alfatlawi, 153 P.3d 804, 820 (Utah Ct.App.2006) (racial bias); People v. Moniz, 2003 WL 21508430, unpublished opinion per curiam of the Mich. Court of Appeals, issued July 1, 2003 (Docket No. 234431) (racial bias).
¶ 28. While procedural bars may apply, we proceed to determine whether the record shows error affecting Robinson’s substantial rights. Because of the nature and seriousness of Robinson’s allegations and to ensure there has been no miscarriage of justice, we review for plain error. See Frierson, 818 So.2d at 1141 (¶¶ 10-12). In conducting our review, we are mindful that the supreme court has clearly explained there is a presumption that the “trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption.” Payton v. State, 897 So.2d 921, 943 (¶ 72) (Miss.2003). The scope of this inquiry focuses on whether a “reasonable person, knowing all the facts and circumstances, would harbor doubts about [the trial judge’s] impartiality.” Frierson, 818 So.2d at 1142 (¶¶ 12,15) (quoting Summers ex rel. Dawson v. St. Andrew’s Episcopal Sch., Inc., 759 So.2d 1203, 1209 (¶21) (Miss.2000)).
¶ 29. Our inquiry is made more difficult here by the generalities of Robinson’s allegations. Though Robinson does not allege many specifics, it appears from our review that most of her assertions implicating the chancellor’s temperament and alleged bias stem from the chancellor interrupting Robinson during her closing argument.
¶ 30. The record shows that during her final argument Robinson strongly insinuated the chancellor had been unfair in handling the issuance of subpoenas for two witnesses. She hones in on the chancellor’s interruption of her summation and his effort to correct what he deemed to be a factual misrepresentation in her argument. The chancellor disagreed that he had cut short her case or thwarted her obtaining process on two witnesses.
¶ 31. Our review indicates that apparently Robinson had not followed the chan *668 cellor’s earlier instructions regarding the issuance of subpoenas. But we note the record shows the chancellor recessed court to allow Robinson additional time to serve the requested subpoenas, and the two witnesses that Robinson sought to secure both ultimately testified. It is apparent from the record that the chancellor tried to ensure Robinson was able to call the two witnesses she wished to testify. And when Robinson suggested otherwise, the chancellor understandably interjected to clarify the record. In doing so, he warned Robinson of the court’s authority to hold her in contempt for further baseless attacks on the court. See Dennis v. Dennis, 824 So.2d 604, 608-09 (¶ 10) (Miss.2002) (discussing court’s authority to find persons in direct contempt for comments “calculated to embarrass or prevent the orderly administration of justice”). We find nothing that suggests racial undertones or bias in this exchange.
¶ 32. Robinson places much emphasis on her claim that the chancellor threatened he would show her some “Mississippi justice,” which she argues had racial connotations. However, we find no such comment in the record. We further note the court reporter certified that the transcript fully and correctly depicted the hearing. Robinson contends the exchange was intentionally omitted from the trial transcript, but she has come forward with nothing to support this allegation. And as the appellant, Robinson has the burden “to ensure the record contains ‘sufficient evidence to support [her] assignments of error on appeal.’ ” Nelson v. State, 919 So.2d 124, 126 (¶ 7) (Miss.Ct.App.2005).
¶ 38. Had record support existed that the chancellor’s rulings were under-girded by racial prejudice or impropriety, our analysis and conclusions would indeed differ drastically. But we find no support for her claim of racial prejudice, and we are strictly precluded from considering matters outside the record. Hardy v. Brock, 826 So.2d 71, 76 (¶ 26) (Miss.2002). Other jurisdictions havé likewise concluded that an appellant may not rest upon bare allegations of omissions from transcripts with no corroborating evidence. State v. Baker, 582 So.2d 1320, 1335 (La.Ct.App.1991); Zabin v. Picciotto, 73 Mass.App.Ct. 141, 896 N.E.2d 937, 966 (2008). We have carefully combed the record and found no support for Robinson’s claims of racial bias. Because Robinson’s accusations of judicial bias neither appear in the record nor are apparent from the context of the chancellor’s rulings, we find no reversible, error under our plain-error review.
V. Continuance
¶ 34. Robinson finally contends that the chancellor erred in adjudicating ownership of the land without hearing testimony from her proposed handwriting expert. She contends the chancellor improperly failed to grant a continuance to allow her proposed handwriting expert to testify that the signature on a deed to the property was a forgery.
¶ 35. Trial judges are vested with “broad discretionary powers in granting or refusing to grant a continuance.” Frye v. S. Farm Bureau Cas. Ins. Co., 915 So.2d 486, 490 (¶12) (Miss.Ct.App.2005) (citing McClendon v. State, 335 So.2d 887, 888 (Miss.1976)). We review this issue for an abuse of discretion. Owens v. Thomae, 759 So.2d 1117, 1120 (¶10) (Miss.1999). We do not reverse the denial of a motion for continuance “unless manifest injustice appears to have resulted from [its] denial[.]” Davidson v. N. Cent. Parts, Inc., 737 So.2d 1015, 1017 (¶5) (Miss.Ct.App.1998) (citing Thomas v. Hilbum, 654 So.2d 898, 903 (Miss.1995)).
¶ 36. The record shows that Robinson was not diligent in securing the presence *669 of her proposed witness, which the supreme court has held to be a sufficient basis to deny a request for a continuance. Cantrell v. Peugh, 149 Miss. 21, 28, 115 So. 116, 117 (1927). Robinson failed to designate the witness as an expert sixty days before trial as required by Uniform Chancery Court Rule 1.10(A). Instead, three days into the hearing, she informed the chancellor for the first time that she wished to have the witness testify by telephone because he could not appear in person. For these reasons, we find no error in the chancellor’s refusal to grant a continuance.
¶ 37. Further, we see no manifest error in the chancellor’s finding that Robinson failed to meet her elear-and-convincing burden[7] of showing fraud given the lack of credible evidence supporting her position. Because we find no self-evident error concerning the chancellor’s disposition of the land or any other error requiring reversal, we affirm.
¶ 38. THE JUDGMENT OF THE AT-TALA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MYERS, P.J., NOT PARTICIPATING.

. For simplicity purposes, we use Robinson’s name in referring to the appellants. All discussion regarding Robinson applies equally to Washington unless specifically noted otherwise.

. The property has a complicated history involving numerous family members either inheriting or receiving inter-vivos conveyances of various undivided interests in the property over many years.

. Washington was represented by counsel at trial but has appealed pro se.

. See Issue III.

. We recognize that Robinson does cite some authority in her reply brief, but failure to argue an issue in the principal brief is a procedural bar. Tanner v. State, 20 So.3d 764, 768 n. 4 (Miss.Ct.App.2009). Waiver aside, we note that most of her arguments are still unsupported by authority, and none of the authority cited entitles her to relief under the facts of this case.

.Since challenged by Robinson, we note that the chancery court has subject-matter jurisdiction over partition actions. Miss. Const, art. 6 § 159, § 160. See also Miss.Code Ann: § 11-21-3 (Rev.2004).

. See, e.g., Ballard v. Commercial Bank of DeKalb, 991 So.2d 1201, 1207 (¶26) (Miss.2008).