IRVING, P.J.,
for the court:
¶ 1. The appeal arises from the Adams County Chancery Court’s judgment, ordering the partition of real property owned by Wilson Young and the estate of Gloria Young, closing the estate, and denying all of Young’s post-judgment motions. Feeling aggrieved, Young, acting pro se, appeals and presents the following issues, which we have recast for clarity: (1) the court erred in denying Young an interest in the estate; (2) the court erred in denying Young’s right to his personal property; (3) the court erred in denying Young’s motion requesting that Chancellor McGe- *880 hee recuse from the case; (4) the court erred in not finding that Thomas, the chancery court clerk, and Peggy Stricklin, the chancery court reporter, were concealing documents and transcripts; (5) the court erred in denying Young’s right to send a delegate to the docket calls where trial dates were established; (6) the court erred in approving the final accounting, as the final accounting was defective; (7) the court erred in finding that Young’s liability claims against Gloria’s estate were time-barred; (8) the court erred in denying Young’s pretrial pleadings; (9) the court erred in attaching a lien to Young’s interest in the estate; (10) the court erred in refusing to correct certain trial transcripts; (11) the court failed to properly find the facts; (12) the court erred in entering an order, sua sponte; (13) the court erred in making only a general reference to credits granted to Young; (14) the court erred in its interpretation of Young’s statements regarding the partition; and (15) the court abused its judicial discretion.
¶ 2. Issues eight through fifteen are merely accusatory statements, and Young does not cite any law or facts to support these accusatory assertions. Therefore, we decline to address those issues. As to his remaining issues, we find no error. Consequently, we affirm the judgment of the chancery court.
FACTS
¶ 3. On June 21, 1988, the chancery court granted Young and his wife, Gloria, a divorce. In the judgment of divorce, the chancellor awarded Gloria the use and possession of the marital home that she and Young owned as joint tenants with the right of survivorship. The chancellor also ordered Young to pay child support for the parties’ three minor children: Tiffany, Tamika, and Tabatha. Gloria continued to live in the home following the divorce until March 11, 1990, when she was murdered by Young.[1]
¶ 4. Gloria died intestate, owning various items of personal property, along with the previously described interest in the marital home. The chancery court appointed O’Beime administrator of Gloria’s estate. On June 18, 1990, O’Beirne issued a notice to creditors of the estate. Young did not file a claim against the estate within the ninety-day period following publication of the notice.[2]
¶ 5. Nearly seven years after the publication of the notice to creditors, O’Beirne and Young’s three children[3] (the plaintiffs) filed a complaint against Young for contempt, back child support, cancellation of the survivorship clause in the deed, and imposition of a lien against Young’s interest in the marital home. The complaint specifically alleged that Young had made no child-support payments prior to or during his incarceration and that a lien should be placed on his interest in the home. The complaint also asked that Young not be allowed to receive title to the home pursuant to the “survivorship clause” in the deed and that he should be required to “relinquish complete control and possession” of the home. Young answered the complaint, alleging that the plaintiffs were *881 not entitled to any of the relief and that the complaint should be dismissed.
¶6. The plaintiffs filed a motion for summary judgment. Young filed an answer to the summary-judgment motion, alleging that he was unable to pay the child support due to his incarceration, that he was still entitled to his one-half interest in the home and should be compensated for his interest, and that there was a contract between him and Gloria regarding the real property, all of which established a genuine issue of material fact. After a hearing, the chancery court granted a partial summary judgment, holding that Young was barred from receiving Gloria’s one-half undivided interest in the jointly owned marital domicile. The chancellor ordered that Gloria’s interest would pass to the Youngs’ three children and granted exclusive use and possession of the property to the three children and Rice, their temporary custodian. All remaining issues were continued to a later date.
¶ 7. On February 26, 1998, the chancery court entered a judgment finding that Young’s child-support arrearage totaled $17,867, plus interest. On July 8, 1998, the court entered an order, at O’Beirne’s request, permitting O’Beirne to offer the home for rent and to deposit the money collected from the rent into the estate’s bank account.
¶ 8. On June 25, 2002, O’Beirne petitioned for approval of the first accounting of the estate. The petition also stated that personal property owned by the estate had been sold, and that the proceeds from the sale had been deposited into the estate’s bank account. The court approved the accounting. In the judgment approving the accounting, the court granted a lien against Young’s one-half interest in the home for the $17,867 child-support arrear-age.
¶ 9. Young filed a complaint objecting to the order approving the first accounting of the estate, and moving the court to vacate the order. Specifically, Young argued that he had received a copy of the order approving the first accounting, but was not served with a copy of the petition for approval of the accounting and, therefore, was unable to make a timely objection. Additionally, he argued that the court never ordered that a lien be placed on his one-half interest in the home and that the personal property that he received in the divorce decree had been wrongfully sold by the plaintiffs’ attorney. Young also requested that the court require O’Beirne to produce several documents, listed in Young’s complaint, and to answer the interrogatories attached to Young’s complaint in opposition to the first accounting. O’Beirne filed an answer to Young’s objection to the approval of the first accounting, stating that Young had no standing to object and that his objection should be dismissed. O’Beirne also stated that the “court[’s] docket- and [the] courtfs] orders are all open to the public and available to [Young],” that he should not have to respond to Young’s discovery requests, and that the court should grant O’Beirne a restraining order against Young.
¶ 10. The next development in this case was a partition petition filed by the plaintiffs, seeking a partition of the house and lot. The plaintiffs asked that Young’s one-half interest in the property be conveyed to his children as a credit against the child-support arrearage after all attorney’s and administrator’s fees had been either paid or credited. Young filed an answer, stating that the court had not ruled on his objection to the first accounting, rendering the plaintiffs’ petition for partition “premature and obsolete.” The plaintiffs moved for a partial summary judgment on their petition, asking that the court, among oth *882 er things, dismiss Young’s objection to the first accounting or hold a separate trial on the issue, and dismiss Young’s personal-property claim. Young filed an answer to the plaintiffs’ motion for partial summary judgment, arguing that the motion for partial summary judgment was “premature and obsolete.”
¶ 11. On June 23, 2003, O’Beirne filed a petition for approval of the second accounting of Gloria’s estate and sent a copy of the petition to Young. Young filed an answer to the petition, asking the court to reject the petition. On March 3, 2010, O’Beirne filed a petition for approval of the third accounting, and Young filed a petition asking the court to dismiss O’Beirne’s petition. Also, at some point in 2010, Young filed a motion requesting that Chancellor McGehee recuse from the case. Chancellor McGehee denied Young’s request.
¶ 12. On April 4, 2011, O’Beirne filed a petition for a final accounting, requesting approval of all accountings and requesting that the court close the estate. On June 27, 2011, the court held a final hearing on the matter of the partition of the real property, informing Young that there was “no need in [Young] getting involved in the accounting to the estate in general,” as he only had an interest in the real property.[4] During the hearing, Young acknowledged that, other than a pool table, which he admitted was worthless, none of his personal property was in the house. Young affirmed that he did not oppose the partition. The court stated that any pleading that Young had filed regarding Young’s personal property and all objections that Young had filed to the various accountings of the estate were denied. The court issued a judgment following the hearing, finding that Young had no interest in the estate, and that Young had confirmed this by admission. The court denied Young’s claims that sought to hold the estate or anyone working for the estate liable for any personal property that Young received from the divorce. The court also approved the sale of the real property and held that all objections to the sale and distribution had either been withdrawn or were overruled.[5]
¶ 13. On June 28, 2011, O’Beirne moved the court to issue an order compelling Young to cease and desist in his filings of pleadings and letters regarding issues concerning the estate, more particularly, his requests for documents. On August 18, 2011, Young sent a letter to Stricklin, requesting transcripts of the hearing held on June 27, 2011.
¶ 14. On August 29, 2011, the court entered a judgment closing the estate; reaffirming its order approving the first accounting of the estate; and approving the second, third, and final accountings of the estate. On the same day, Young filed a pleading denoted as a “notice of motion” in which he requested the court to rule on motions filed prior to the June 27, 2011 hearing. He also filed a motion for an order to release transcripts of previous hearings. Chancellor McGehee sent a let *883 ter to both Young and Thomas M. McNeely, the plaintiffs’ attorney, stating that he had advised the court reporter and other court personnel to provide transcripts to anyone that requests them, including Young, that the clerk had provided Young all other documents that he had requested thus far, and that he knew of no requirement upon the clerk or other personnel to provide Young with documents that did not exist in the record or make transcripts at the request of Young when no actual transcription had been made.
¶ 15. On September 8, 2011, Young filed a motion for relief from the judgments ordering the partition of the real property and closing the estate. On November 18, 2011, the court issued an order denying Young’s plethora of post-judgment motions, and further stated that all of Young’s other pending motions “have been and/or are hereby denied.” The court also stated that the ruling was a final one on all post-trial motions so as to position the matter for appeal if either party had any appealable issues. On November 30, 2011, Young filed a request for leave to proceed in forma pauperis on appeal.[6]
¶ 16. On December 6, 2011, the court issued an order with an attached letter opinion, stating that all of Young’s pending post-judgment motions had been fully considered by the court and denied. The court stated that Young would continue to have the benefit of his in forma pauperis status. Young filed a motion for findings by the court, asking for legal clarity of the court’s December 6, 2011 order. On December 22, 2011, the court issued its findings of fact and conclusions of law, stating, among other things, that
Young’s only interest in this matter was an interest as [a] tenant[] in common with the Estate in a parcel of real property. The fact that Young had a common interest with the Estate in a tract of real property does not/did not grant him any interest whatsoever in the Estate of Gloria Jean Rice Young.
The order also stated that Young agreed with the partition of the real estate and that his interest was credited to him relative to the outstanding judgment for back child support, which Young agreed with. The court further stated that any personal-property claims asserted by Young more than twenty-one years after the divorce decree were related to the separate divorce action, and not the action involving the administration of Gloria’s estate.
¶ 17. On October 15, 2012, Young, again, sent a request for documents to O’Beirne, and O’Beirne sent Young all of the documents requested. On December 6, 2012, Young filed a complaint for contempt and request for relief against O’Beirne and Stricklin, claiming that O’Beirne was concealing documents and that Stricklin never responded to his request for trial transcripts. Stricklin wrote a letter to Young after receiving notice of his complaint, explaining that, contrary to Young’s belief, she had not served as court reporter for the trial on June 27, 2011, because she was working on another case for another judge in Natchez on that day. Stricklin filed an answer to the complaint, stating that she did receive a letter from Young requesting transcripts from the June 27, 2011 trial, but no response was required, as she did not work as court reporter on that date. O’Beirne also filed an answer to Young’s complaint, denying that he concealed transcripts from Young and claiming that the court lacked jurisdic *884 tion to hear Young’s complaint, as it was filed sixteen months after the judgments closing the estate and partitioning the real property, and eleven months after the court issued its findings of facts and conclusions of law.
¶ 18. On January 10, 2013, Young filed another motion requesting that Chancellor McGehee recuse from the case. He reasoned that Chancellor McGehee should not have conducted a hearing in Young’s absence, since, in prior proceedings, Young had been allowed to make an appearance via telephone. Young also alleged that Chancellor McGehee was once Gloria’s attorney.
¶ 19. Additional facts, as necessary, will be related in our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 20. We will not disturb the findings of a chancellor unless they are manifestly wrong, clearly erroneous, or emanate from the application of an improper legal standard. Robinson v. Burton, 49 So.3d 660, 663 (¶ 9) (Miss.Ct.App.2010) (citing Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009)). “[W]e are restrained from substituting our own judgment for that of the chancellor, even if we disagree with his or her findings of fact and would arrive at a different conclusion.” Id. (citing Coggin v. Coggin, 837 So.2d 772, 774 (¶ 3) (Miss.Ct.App.2003)).

I.Young’s Interest in the Estate

¶ 21. Young claims that the chancellor erred in finding that Young had no interest in the estate other than the issue of partition of the real property. As stated, the chancellor cited section 91-5-33 to support his finding. However, section 91-5-33 is inapplicable to the facts here, as Gloria did not have a will, testament, or codicil at the time of her death. The statute applicable to these facts is Mississippi Code Annotated section 91-1-25 (Rev.2013), which provides that “[i]f any person wilfully cause[s] or procure[s] the death of another in any way, he shall not inherit the property, real or personal, of such other; but the same shall descend as if the person so causing or procuring the death had predeceased the person whose death he perpetrated.” It is undisputed that Young murdered Gloria. Therefore, pursuant to section 91-1-25, Young cannot have any interest in Gloria’s estate. The chancellor did not err in his findings here. Therefore, this issue is without merit.

II. Interest in Personal Property

¶ 22. Young argues that O’Beirne and McNeely lost or converted his personal property that was left in the marital home. However, Young provides no proof to support his allegations. Chancellor McGehee ruled that any claims involving personal property should have been handled within the divorce action, separate from this action. The chancellor also stated:
It would not have been the responsibility of the administrator as the duties of that office do not include the care and preservation of personal property belonging to strangers. Further, even if there was, is[,] or could be some merit to those claims, the matter at issue is of little or no nominal value.
We agree, as the evidence reveals that the only personal property in the home that belonged to Young was a pool table that he did not want because he claimed it was worthless. This issue is without merit.

III. Chancellor McGehee’s Refusal to Recuse

¶ 23. Young initially requested that Chancellor McGehee recuse from this *885 case in 2010. Young accused Chancellor McGehee of once representing Gloria as her attorney, creating a conflict of interest. Article 6, Section 165 of the Mississippi Constitution of 1890 provides that “[n]o judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties.” At the June 25, 2010 hearing, Chancellor McGehee asserted that he was “pretty sure” that he never even knew Gloria and had never represented her. Chancellor McGehee stated that he had even consulted with prior secretaries to confirm this. Chancellor McGehee further stated that even if he had known or represented Gloria, she was not a party to the present action.
¶24. Young also alleges that Chancellor McGehee’s presiding over the case caused prejudice to him because of the chancellor’s unfamiliarity with the essential facts of the case, in violation of Rule 68 of the Mississippi Rules of Civil Procedure.[7] Rule 63 provides:
If for any reason the judge before whom the action has been commenced is unable to proceed with the trial, another judge regularly sitting in or assigned under law to the court in which the action is pending may proceed with and finish the trial upon certifying in the record that he has familiarized himself with the record of the trial; but if such other judge is satisfied that he cannot adequately familiarize himself with the record, he may in his discretion grant a new trial.
To support his assertion, Young points to a single sentence in Chancellor McGehee’s November 18, 2011 order, which reads: “The very first hearing in this matter, due to the court’s unfamiliarity with the past procedure!,] was held in Mr. Young’s absence!,] but not without notice.” This statement itself does not indicate that Chancellor McGehee was' unfamiliar with the essential facts of the case, only that Chancellor McGehee was not initially aware that Young had been present via telephone for proceedings in which the court set the trial dates. We cannot find that the chancellor erred in denying Young’s request for recusal. This issue is without merit.

IV. Concealment of Documents

¶ 25. Young argues that O’Beirne and Stricklin purposely concealed documents and transcripts, causing extreme prejudice to him. Young argues that O’Beirne and Stricklin’s alleged concealment violates his Fourteenth Amendment right and denies him access to documentation that would aid in his defense. However, Young cites no specific documents that O’Beirne and Stricklin allegedly concealed other than the June 27, 2011 hearing transcripts. Additionally, he does not provide any proof of deliberate concealment of the transcripts. Stricklin informed Young that she did not serve as court reporter on the day of the June 27, 2011 hearing. Also, although Young did not receive the hearing transcripts before he filed the complaint against O’Beirne and Stricklin, he did receive the transcripts from O’Beirne on February 6, 2013. Accordingly, this issue is without merit.

V. Lack of Representation at Docket Call

¶ 26. Young claims that the chancellor violated Rule 40 of the Mississippi *886 Rules of Civil Procedure by denying Young the right to “send a delegate to the setting of all trial dates.” Rule 40 governs the methods by which the court assigns cases for trial and provides notice to the parties. Although Rule 40 requires the clerk to give notice to “all attorneys and parties without attorneys having cases upon the trial calendar of the time, place, and date when the docket shall be set,” it does not require that parties without attorneys be allowed to send a non-lawyer delegate to the docket call. While, but for his incarceration, Young could have represented himself at the docket call, our law does not allow non-lawyers to represent others. Consequently, Young’s claim that the chancellor violated Rule 40 is without merit. Further, it is clear that Young did not suffer any permanent prejudice as a result of not being notified of the hearing where the first accounting was approved since his challenge to the approval of the first accounting was later considered and rejected by the chancellor.

VI. Denial of Motion to Dismiss the Annual and Final Accountings

¶ 27. Young argues that his oral motion to dismiss the accountings of the estate renders the accountings void in their entirety, and makes the partition of the estate void for want of an accurate accounting. Young further claims that McNeely illegally questioned Tabatha pursuant to Rule 8.03 of the Uniform Rules of Chancery Court, and concealed her testimony. However, he offers no proof of his assertions, nor does he explain how Rule 8.03 applies to the testimony in the transcripts that he references and how McNeely illegally questioned Tabatha. Consequently, this issue is without merit.

VII. The Time-Bar

¶ 28. Young insists that the chancellor erred in finding that he was time-barred from making liability claims against the estate. Specifically, Young argues that O’Beirne and McNeely converted and lost his personal property, a violation of his Fourteenth Amendment rights. However, the chancellor never held that Young was time-barred from pursuing his personal-property claims. The chancellor merely pointed out that those claims should have been brought under the divorce action— which was initiated over twenty years ago — as the personal property that Young claims was lost or converted is what he received as a result of the divorce decree. Young cites Rule 1.15(c) of the Mississippi Rules of Professional Conduct, which states that
[w]hen a lawyer is in possession of property in which both the lawyer and another person claim an interest, the property shall be kept separate by the lawyer until completion of the accounting and severance of their respective interests. If a dispute arises concerning the respective interests, the lawyer shall disburse the portion not in dispute, and keep separate the portion in dispute until the dispute is resolved.
Rule 1.15(c) is inapplicable here, as this is not a scenario where both Young and a lawyer claimed an interest in property that was in the possession of the lawyer. Young also cites Rule 6.03 of the Uniform Chancery Court Rules, which provides the specifics of what must be attached to each annual account filed by the fiduciary. While it is not clear how Young thinks this rule impacts the time-bar, it appears that he may be contending that the accounting filed by O’Beirne did not comply with this rule and that this failure tolled the ninety-day period for filing a claim against the estate. However, he cites no authority in support of this argument. Therefore, we are not obligated to address it. Dampier v. State, 973 So.2d 221, 229-30 (¶ 20) (Miss. *887 2008). Nevertheless, it seems reasonably clear that nothing in the rule relates to a tolling of the ninety-day period in which to file a claim against a deceased’s estate. This issue is without merit.
¶ 29. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Young was convicted of Gloria's murder and sentenced to life imprisonment. This Court affirmed his conviction and life sentence. Young v. State, 662 So.2d 204 (Miss.Ct.App.1995).

. Mississippi Code Annotated section 91-7-145 (Rev.2013) provides that a creditor’s
"failure to probate and register [his claim] within ninety (90) days after the publication of such notice will bar the claim."

.Sammy Rice, Gloria’s uncle, served as the children’s next friend.

. To support his reasoning, the chancellor cited Mississippi Code Annotated section 91-5-33 (Rev.2013), which provides, in pertinent part:
If any person shall wilfully cause or procure the death of another in any manner, he shall not take the property, or any part thereof, real or personal, of such other under any will, testament, or codicil. Any devise to such person shall be void and, as to the property so devised, the decedent shall be deemed to have died intestate.

. In November 2010, the house sold for $25,000. Young's one-half interest in the net proceeds was divided equally between his three daughters in partial satisfaction of the child-support judgment.

. Although not formally entitled "Notice of Appeal,” Young's request has been filed and treated as such by this Court’s clerk.

. Chancellor McGehee was appointed as a special chancellor to hear the case after both chancellors in the district recused. One of the chancellors presided for some time before recusing.