# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00870-COA

KARL HODGES, INDIVIDUALLY AND ON BEHALF OF OTHER WRONGFUL DEATH BENEFICIARIES OF ISAAC HODGES, DECEASED, AND AS ADMINISTRATOR OF THE ESTATE OF ISAAC HODGES                    APPELLANT

v.

THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER                    APPELLEE

DATE OF JUDGMENT:            04/07/2016
TRIAL JUDGE:                HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:  HINDS COUNTY CIRCUIT COURT,
                            FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:     JAY MAX KILPATRICK
ATTORNEYS FOR APPELLEE:     WALTER T. JOHNSON
                            SUSAN LATHAM STEFFEY
                            WILLIAM ABRAM ORLANSKY
NATURE OF THE CASE:         CIVIL - WRONGFUL DEATH
DISPOSITION:                AFFIRMED - 09/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     Karl Hodges, individually and on behalf of other wrongful-death beneficiaries of Isaac Hodges, deceased, and as administrator of the estate of Isaac Hodges, filed suit against the University of Mississippi Medical Center (UMMC) asserting a claim of medical negligence stemming from the death of Karl's son, Isaac. At a bench trial, Karl tendered Dr. Lawrence Brickman as an expert witness in the field of general vascular and trauma surgery. After

hearing testimony from Dr. Brickman, the trial judge made a ruling from the bench finding Dr. Brickman's testimony unreliable and insufficient to support a claim of medical negligence. The trial judge then entered a judgment in favor of UMMC.

¶2. Karl now appeals, asserting that the trial judge erred in finding Dr. Brickman unqualified to render an expert medical opinion in the present case. Finding no error, we affirm the trial judge's judgment of dismissal in favor of UMMC.

**FACTS**

¶3. Shortly before midnight on January 10, 2013, Isaac was admitted to UMMC for treatment of two gunshot wounds. The record reflects that Dr. Douglas Soltys performed an exploratory laparotomy on Hodges. Dr. Soltys discovered that Hodges suffered from a large gastric perforation, a liver wound, issues with his gallbladder, and a fractured humerus. Dr. Soltys performed a repair of the perforation, a cholecystectomy, and a packing of the liver bed during the initial procedure. After the procedure, Hodges remained in the surgical intensive-care unit (SICU) until Dr. Wesley Vanderlan performed a wound closure secondary abdomen procedure on January 11, 2013.

¶4. As part of the monitoring process postsurgery, Isaac's physician and nurse asked Isaac if he had experienced a bowel movement and passed gas since his surgery. Isaac's mother, Celesta Hodges, testified that Isaac untruthfully told the physician and nurse that he had experienced a bowel movement and passed gas.

¶5. UMMC discharged Isaac on January 15, 2013. Celesta testified that shortly after leaving the hospital, Isaac's condition deteriorated, so she and Karl drove Isaac back to

2

UMMC for treatment. Isaac died four days later. In the autopsy, the coroner listed Isaac's manner of death as homicide and opined that Isaac's death was caused by complications from multiple gunshot wounds.

¶6. On January 7, 2014, Karl filed a complaint alleging that UMMC was liable for Isaac's death based on medical malpractice due to the collective alleged negligence of members of its medical staff who provided medical care to Isaac. At a bench trial held on February 3, 2016, the trial judge heard testimony from Celesta, Dr. Brickman, and Dan Murphy, a friend of the Hodges family who visited Isaac in the hospital.

¶7. The record reflects that at the bench trial, Karl tendered Dr. Brickman as an expert witness in the field of general vascular and trauma surgery, as well as the coordination of residency programs. Counsel for UMMC objected and requested that the trial judge allow him to voir dire Dr. Brickman regarding the doctor's qualifications.

¶8. During voir dire by counsel for UMMC, Dr. Brickman explained that he does not have an office in general surgery and is no longer board certified, but he "do[es] academic things in general surgery." Dr. Brickman admitted that he is not the primary surgeon on any surgery, but that he does assist in surgery three times a week. Dr. Brickman confirmed that he had not been the primary surgeon, "or the one [who] cuts," in over a decade, nor had he provided a patient with postoperative care since 2005. Dr. Brickman also admitted that he had never possessed a board certification in critical-care medicine.

¶9. Counsel for UMMC also questioned Dr. Brickman about the relevant standard of care in the present case, as well as Dr. Brickman's definition of standard of care:

3

Q:      You have testified before that the standard of care is how you would do a thing?

A:      Yes, I have.

Q:      And is that still your opinion today?

A:      Yes.

Q:      And you have said that if—that understandably two physicians can differ in what they think a thing should be?

A:      Yes.

Q:      However, the one that is wrong about a thing, then that's the one who's breached the standard of care?

A:      It's a very broad question. And I have to be honest with you. Every case is different.

. . . .

Q:      Where did you learn that definition of standard of care, Doctor?

A:      Something that I just formulated in my own head. If you practice well you pay attention to detail, you have very few complications. I think you're defining the standard of care.

Counsel for UMMC then made an ore tenus motion for the trial judge to strike Dr. Brickman as an expert witness. The trial judge held the issue under advisement.

¶10.    After hearing Dr. Brickman's testimony in its entirety, the trial judge made a ruling from the bench wherein he found that Dr. Brickman failed to meet the requirements of Mississippi Rule of Evidence 702[1] and also failed to sufficiently articulate the applicable

---

[1] Rule 702 discusses testimony by an expert witness and provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

4

medical standard of care or a breach thereof.  The trial judge explained:

> In my dual role as trial judge and fact finder in this case, I have the difficult task of determining whether the plaintiff's expert testimony presented yesterday was sufficient to support a claim of medical negligence against UMMC under Mississippi law.  After hearing the testimony of the plaintiff's expert Dr. Lawrence Brickman, yesterday, and considering the objections by the defendants, and after much careful consideration and a study of the applicable law, I find that the testimony is unreliable and insufficient under Mississippi law to support a claim of medical negligence.

¶11.  Accordingly, the trial judge struck Dr. Brickman's testimony.  Since Karl failed to provide any additional medical expert testimony at trial, the trial judge thus granted a dismissal with prejudice in favor of UMMC.

¶12.  Karl filed a motion for reconsideration and a new trial, which the trial judge denied.  This appeal followed.

## STANDARD OF REVIEW

¶13.  "The standard of review for the admission or suppression of evidence in Mississippi is abuse of discretion." *Troupe v. McAuley*, 955 So. 2d 848, 855 (¶19) (Miss. 2007).  We also review a trial court's determination as to the qualifications of an expert witness under an abuse-of-discretion standard.  *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶11) (Miss.

---

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

5

2007).

¶14.    The Mississippi Supreme Court has articulated that "[t]he trial judge has the sound discretion to admit or refuse expert testimony; an abuse of discretion standard means the judge's decision will stand unless the discretion he used is found to be arbitrary and clearly erroneous." *Troupe*, 955 So. 2d at 856 (¶19).  When determining whether to admit or refuse expert testimony, we recognize that "[t]rial court judges have a gate-keeping responsibility to assure a proposed expert's opinion has a reliable basis in the knowledge and experience of the relevant discipline." *King v. Singing River Health Sys.*, 158 So. 3d 318, 322 (¶15) (Miss. Ct. App. 2014) (internal quotation marks omitted) (citing *Worthy v. McNair*, 37 So. 3d 609, 614 n.3 (Miss. 2010)).

## DISCUSSION

¶15.    Karl argues that the trial court erred in finding Dr. Brickman unqualified to provide expert testimony in the present case.  Karl maintains that Dr. Brickman's testimony met the requirements to present a prima facie case of medical negligence.

¶16.    In support of his claim, Karl states that Dr. Brickman testified that he held medical licenses in two states and had never had his license suspended or revoked.  Karl also asserts that the testimony showed that Dr. Brickman received specialty training in vascular and trauma surgery and practiced general vascular and trauma surgery in New York for thirty years.  Karl states that Dr. Brickman testified that he had performed over 1,000 abdominal laparotomies in his career, including the postoperative care and discharge of the patient, and that he was familiar with the signs and symptoms of ischemic bowel syndrome.  Karl

6

acknowledges that although Dr. Brickman admitted that he had not performed an abdominal laparotomy in the last ten years, Dr. Brickman testified that the standards of care for postoperative care and the signs and symptoms of ischemic bowel syndrome have not changed in the last ten years. Karl also maintains that UMMC failed to file a motion to strike Dr. Brickman's testimony.

¶17. In *McDonald v. Memorial Hospital at Gulfport*, 8 So. 3d 175, 181 (¶15) (Miss. 2009), the supreme court stated:

> Expert testimony should only be admitted if it withstands the two-prong inquiry under Rule 702. First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education. Second, the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.

¶18. Additionally, "the success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiff's selected medical expert. The expert must articulate an objective standard of care." *Cates v. Woods*, 169 So. 3d 902, 906 (¶11) (Miss. Ct. App. 2014) (citing *McGee v. River Region Med. Ctr*., 59 So. 3d 575, 578 (¶9) (Miss. 2011)). "Not only must an expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id*.

¶19. In providing his ruling from the bench, the trial judge acknowledged his role as "gatekeeper" to determine the admissibility and reliability of expert-witness testimony. The trial judge also acknowledged the standard set forth in Rule 702 regarding the testimony of an expert witness, and he explained that Mississippi law requires objective testimony from

a qualified expert. The trial judge cited to *Estate of Northrop v. Hutto*, 9 So. 3d 381, 384 (¶9) (Miss. 2009), and stated that "a medical expert who answer[s] in terms of what he would do as a physician [was] found not to be articulating an objective standard." The trial judge also explained that "[a]n expert witness who is opining as to a hospital's alleged negligence is required to have a knowledge and familiarity with the hospital or similar facility."

¶20. The trial judge observed that

> the sole issue in this case has been described by [Dr. Brickman] as being premised on an alleged breach of the standard of care concerning post-operative care by UMMC by discharging [Isaac] too soon. Dr. Brickman also alluded to opinions of alleged failures of UMMC . . . to sufficiently supervise resident physicians.

¶21. Regarding UMMC's objections to Dr. Brickman's qualifications as an expert and his testimony, the trial judge stated:

> Dr. Brickman unequivocally denied any knowledge of UMMC's hospital procedures and UMMC's residency program rules and requirements. Similar to the expert that was disqualified in *Palmer* [*v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1358 (Miss. 1990)], Dr. Brickman admitted that he had "never visited UMMC," that he is "unfamiliar with these facilities and their staff." And importantly both here and in *Palmer*, the experts "currently had no affiliations with any hospital anywhere." The disqualified expert in *Palmer* had been without hospital privileges for nine years when offered as an expert; in this case, [Dr. Brickman] had been without hospital privileges for ten years.

> The failure to produce a competent medical expert prohibits the plaintiff from bringing the case to trial, and in every kind of case, a judgment notwithstanding the verdict is generally appropriate when the plaintiff has failed to produce sufficient admissible evidence to establish a prima facie case of medical negligence.

¶22. In *Palmer*, 564 So. 2d at 1358-60, the supreme court held that the trial judge's disqualification of a plaintiff's expert witness in a medical-malpractice suit was "fully

8

justified" where the expert witness "lacked both knowledge and familiarity with the hospital or similar facility." The supreme court found that the expert witness's trial testimony therein reflected his lack of knowledge and familiarity with the hospital at issue. *Id*. at 1358. The supreme court also recognized that the expert witness "currently has no affiliations with any hospital anywhere and has had no hospital privileges for the past nine years." *Id*.

¶23. Next, the trial judge herein opined:

> Most alarming to this Court[] was Dr. Brickman's clear inability to articulate the applicable standard of care[,] which he contends should have been followed during [Isaac's] discharge.
>
> Furthermore, [Dr. Brickman] testified that medical negligence can be inferred simply when a patient experiences complications. Dr. Brickman's opinions are significantly and legally flawed. Mississippi law is clear that the simple existence of medical complications is not considered a breach of the standard of care.
>
> Further, claims of negligence cannot be evaluated through the lens of hindsight. Dr. Brickman further described the standard of care as one "he formulated in his own head," which is contrary to the objective requirement found in Mississippi law. In sum, the expert opined that a physician who practices meticulously is not guilty of medical negligence.

As previously stated, an expert witness "must articulate an objective standard of care." *McGee*, 59 So. 3d at 578 (¶9).

¶24. The trial judge acknowledged that Dr. Brickman mentioned a few specific medical records related to his opinion that UMMC discharged Isaac too soon. The trial judge stated that Dr. Brickman also discussed that Isaac exhibited "two or three symptoms indicating a serious medical problem," which "were improperly ignored by UMMC." However, the trial judge explained that during cross-examination, "counsel for UMMC established reasonable

9

alternative bases for these symptoms." Regarding Dr. Brickman's claim that UMMC's medical records contained many omissions of alleged symptoms suffered by Isaac prior to his discharge, the trial judge determined that "[t]hese conditions and symptoms, such as vomiting and unsteady gait, were not noted by any of the numerous medical providers assisting Isaac, but instead are alleged only by lay family members, and are directly contrary to the documented medical records, including assertions made by Isaac himself concerning his condition."

¶25. The trial judge ultimately held that

> even when considering all of the evidence in the light most favorable to the plaintiff, the Court finds that [Dr. Brickman] shall be stricken based on his lack of qualifications, and even more so, based on his failure to identify an applicable standard of care or any breach by UMMC related thereto.

¶26. Based on our review of the record and applicable precedent, and in keeping in mind our standard of review, we cannot say that the trial judge abused his discretion in striking Dr. Brickman as an expert witness. As a result, we affirm the trial judge's judgment of dismissal in favor of UMMC.

¶27. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. FAIR, J., NOT PARTICIPATING.**